# TYLER TERM, 1898.

### TIP MORRISON v. THE STATE.

#### No. 1826. Decided October 12, 1898.

**1. Murder—Caught in Adultery With Wife—Justifiable Homicide.**

On a trial for murder where the only two witnesses to the homicide testified, defendant. being one, and he testified that he and another party got under the house and heard deceased and defendant's wife go into the room and heard them copulate; that he saw them come from the room together; that he immediately followed, intending to beat his wife: that when he accosted them deceased run on him, and in the altercation he shot him; Held, that the parties not having separated after the act of adultery, and if when defendant came up with them he killed deceased on account of the adultery with his wife, he was justified in taking his life under provisions of article 672, Penal Code.

**2. Same—Where Defendant Testified He Acted in Self-Defense—Charge.**

On the facts stated in the foregoing paragraph, where defendant testified he killed deceased in self-defense, the court should, notwithstanding his testimony, have sub-

mitted in the charge the issue of justifiable homicide predicated upon a killing where deceased had been taken in adultery with the wife, there being no inconsistency between the two defenses.

### 3. Same—Charge—Manslaughter—"Cooling Time."

Upon the facts stated in paragraph 1, supra, the court should have charged upon manslaughter predicated upon adultery with the wife and a killing upon the first meeting thereafter, the facts showing that on the first meeting defendant instantly pursued until he came up with deceased and his wife. If an interval of time had elapsed between the first meeting and the homicide, a charge upon manslaughter in connection with "cooling time" should have been given.

### 4. New Trial—Misconduct of Jury—Affidavit of Juror.

An affidavit seeking to attack the verdict of the jury as to misconduct of the jury in receiving other testimony after their retirement, to be sufficient, must set out the facts.

### 5. Same—Statement as to Former Verdict.

Statement by a juror in the jury room that a former jury had rendered a certain verdict against defendant, is not ordinarily cause for a reversal.

APPEAL from the District Court of Bexar. Tried below before Hon. R. B. GREEN.

Appeal from a conviction for murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Walker Richardson, on the 3d day of April, 1897, by shooting him with a pistol.

The important facts are sufficiently stated in the opinion.

No briefs on file for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years; hence this appeal.

In his motion for a new trial appellant excepted to the action of the court in failing to charge the law of justifiable homicide, and also because the court failed to charge the jury on the law of manslaughter; appellant's contention being that the evidence required a charge on both defensive theories. On an examination of the charge we find that the court charged for the State murder in the second degree, and the only defensive charge given was a charge on self-defense. There were only two witnesses to the facts attending the killing. One of these, to wit, John F. Rodriguez, was introduced by the State, and the defendant testified on his own behalf. The testimony of the State's witness clearly established an unprovoked murder by lying in wait. This witness states: That he was in the vicinity of the Devine House, in San Antonio, near which the homicide was committed, on the night in question, for the purpose of grazing his mare. That while in that vicinity he saw the defendant come up, and crouch down on the street, near some bushes. Presently he saw the deceased and Jennie Morrison, the wife of the de-

fendant, come along from the direction of the Devine House. As soon as they passed, the defendant ran across the street, and shot the deceased in the back, inflicting upon him a wound which caused his death. That defendant then ran off, and witness did not go to the body, but went back to his home. The defendant himself testified that he shot deceased. He states he had reason to believe that deceased was committing adultery with his wife; that on that particular night he was informed by one George Wright that his wife was to meet the deceased at the Devine House, where deceased was working as a domestic; and he went with Wright to the premises; that he saw his wife in the room of the deceased; deceased was then in another room, washing dishes; that he and Wright got under the house and under the room of the deceased; that after a while he heard deceased come into the room, and he heard deceased and his wife get on the bed in the room, and he states that he heard them copulate; that they remained there about an hour; that he heard them get up off the bed, and that he and Wright then got off about thirty-five steps, and stood in the dark, near the privy, and that he saw deceased and his wife come out of the room together; that he and Wright went around another way and intercepted the parties; that he came up behind them, and as he approached he said to his wife, "I have caught you," and she replied, "For God's sake, don't disgrace me on the street." Walker Richardson, the deceased, said, "He is nothing but a common Southern cur," and that he replied, "You are a son of a bitch." The deceased broke to run on him, and that when he got pretty close he hit him with his six-shooter; that deceased wheeled out of the way, and he gave him a kick, and that when he got him down there he shot him; that deceased had a six-shooter at the time; that after he shot him deceased told him that he was dead, and not to shoot him any more; that he led him up to the corner, and that he and George Wright left him; that George Wright picked up the pistol. Appellant stated that it was his intention when he came up to the parties to give his wife a beating with the six-shooter, and leave her alone; that it was not his intention to kill deceased; that deceased took it up, and he had to kill him. If this statement of appellant is true, then, evidently, deceased, Walker Richardson, and defendant's wife were guilty of adulterous intercourse in the room of the deceased on the Devine premises. This circumstance of their meeting and being there was such as to induce the reasonable belief on the part of the defendant that they were engaged in adulterous intercourse and the parties had not separated when defendant came up with them. If this was the motive that actuated appellant in the homicide, then, unquestionably, under article 672, Penal Code, he was justified in taking the life of the deceased. See Price v. State, 18 Texas Crim. App., 474; Massie v. State, 30 Texas Crim. App., 64. However, it is stated that appellant did not assign this as the motive for the homicide, and that, consequently, the court was not required to give this article in charge. Undoubtedly, if the defendant's testimony is to be believed, the attack by him on the deceased was superinduced by the conduct of

the deceased towards his wife; and we do not believe the court was authorized to overlook this phase of the case, notwithstanding appellant himself assigned the killing to another cause, to wit, that he was about to attack his wife on said account, as she was to blame for going to the room of deceased; and that he killed the deceased in self-defense, because he interfered between himself and his wife. There is no inconsistency between the cause assigned by appellant for the killing and the cause shown by the facts attending the killing. The jury may not have believed that deceased attacked appellant at all, or that he acted in self-defense; they may have discredited that part of the appellant's testimony; but they may have believed that appellant slew deceased because he had but recently caught him in the act of adultery with his wife, but, not being authorized under the instruction of the court to give him the benefit of that view of the case, they could not acquit him on that ground. In our opinion, that defense was clearly raised by the testimony, and appellant should have had the full benefit of a charge presenting that theory. Furthermore, the evidence, according to our view, raised the issue of manslaughter. This is not like the case of Pitts v. State, 29 Texas Criminal Appeals, 374, where there was clearly a prior meeting between the parties before the meeting at which the killing took place. True, in this case defendant was standing some thirty steps from the parties when they came out of the door from the room where they had evidently been copulating. He stood in the dark. As soon as they passed out, he immediately pursued them, and the moment he came up with them the altercation occurred in which the homicide was committed. There was here no two meetings, but on the first meeting defendant instantly pursued, until he came up to the deceased and his wife. But a few moments of time could have elapsed between the exit of the parties from the house and the shooting. We do not believe the defendant, under the law, was required to fire upon the deceased as soon as he emerged from the door in order to avail himself of his defense under the theory of manslaughter. Certainly, under the rule laid down in Eanes v. State, 10 Texas Criminal Appeals, 421, if we consider that an interval of time had elapsed between the first meeting and the homicide, then a charge on manslaughter, in connection with cooling time, should have been given. As stated before, however, no charge on manslaughter was given, and defendant was entirely deprived of this theory of his defense presented by the facts of the case. It is difficult to conceive how the learned judge who tried the case should have withheld a charge on this subject, unless he entirely disregarded and discredited the testimony of the appellant. Unquestionably, the cause assigned by him was adequate cause, under our statute, and sufficient to engender passion, and the jury should have been afforded an opportunity to pass upon the truth of his evidence.

Appellant assigned as one of the grounds of his motion for a new trial that the jury received other testimony than that developed on the trial of the case, to wit, that one of the jurors stated in the jury room that a

former jury which tried the case found defendant guilty, and assessed his punishment at twenty years in the penitentiary. Appellant stated in his affidavit that he was unable to procure an affidavit from any of the jurors as to the facts, because they were not willing to make one, and asked the court to summon the jurors who tried the case, and place them under oath, so that the defendant might have the benefit of their testimony. The State made a motion to strike out said affidavit and that part of the motion, because it was too general, and did not set up the facts. The court granted the motion, and struck out that part of the defendant's application for a new trial. Appellant then offered to show by one A. Cohen that he was one of the jurors who tried the case, and that, after the jury had retired to consider their verdict, some member of the jury stated that defendant on a former trial had been convicted, and given twenty years in the penitentiary; that said statement about what defendant had received as punishment at a former trial influenced him in the verdict rendered on the last trial. The district attorney objected to this evidence on the ground that it should be presented by affidavit, and not stated orally; whereupon defendant's counsel stated that the witness was unwilling to make an affidavit, but that he would swear to the above facts upon the stand under oath; and the court, over the defendant's objections, refused to allow said witness to testify as aforesaid. It is not necessary to decide the questions involved in this matter, as the case must be reversed on other grounds heretofore stated. We are inclined to the opinion, however, that the affidavit seeking to attack the verdict of the jury was too general. The practice of allowing jurors to impeach their verdict is not countenanced in the courts of most of the other States of the Union. See 2 Thomp. on Trials, sec. 2618, and authorities there cited. Our courts, however, have taken a contrary view, and we have gone to a considerable extent in authorizing jurors to impeach their verdicts. The attempted impeachment, here, however, as far as the predicate was concerned, stated no facts, and, we think, was too general in its terms. It is not deemed necessary to discuss what effect the announcement in the jury room that appellant had previously been convicted, and his punishment assessed at twenty years in the penitentiary, may have had upon the jury. The mere statement of that fact in the jury room may not have operated to the prejudice of appellant. Before a case would be reversed on this ground, some prejudice must be shown. The bare statement that a former jury had tried the case, and rendered a certain verdict against defendant, would not ordinarily cause a reversal. For the failure of the court to charge the jury as above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*