### JIM MANIS v. THE STATE.

#### No. 2104. Decided March 22, 1900.

**Murder—Self-Defense—Charge.**

On a trial for murder, where the killing occurred in a sudden broil and there was no evidence of any previous difficulty between the parties, and where the court in the charge upon self-defense, after grouping the facts, told the jury to find defendant not guilty unless he acted "in pursuance of a design theretofore formed;" Held, the charge was erroneous in that it did not tell the jury that such previously formed design must have been "unlawful;" it utterly destroyed defendant's right of self-defense by qualifying it by a supposed state of facts not in evidence, and left the jury in such a confused state as that they could not make an intelligent application of said charge.

APPEAL from the District Court of Jackson. Tried below before Hon. WELLS THOMPSON.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of B. F. Ward, on the 28th of August, 1898, by shooting him with a pistol.

The opinion sufficiently states the case.

*Fly & Hill,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of ten years, and he prosecutes this appeal.

Appellant reserved a number of exceptions to the charge of the court, but, in the view we take, there is only one exception that need be noticed, and that is the charge on self-defense, in which the court attempted to group the facts in proof, and to instruct the jury as to their effect. Said charge is as follows: "You are instructed, if you believe from the evidence that deceased had a gun in his hands, and that John Manis also had hold of the same gun, and that deceased in his position attempted to shoot defendant, said he would shoot defendant, while he and the said John Manis were thus holding the gun, or was in the act of thus shooting defendant, and the defendant, from the acts and words of the deceased then being done or spoken, had a reasonable

expectation or fear of death or serious bodily injury then about to be inflicted or threatened upon him by deceased, and that he then shot and killed deceased in order to save his own life or himself from serious bodily injury then about to be inflicted, and not in pursuance of a design theretofore formed by defendant, you will find the defendant not guilty." Appellant excepted to this charge on the ground that it authorized the jury to convict defendant if he designedly killed Ward, whether such design was lawful or not. We think, under the circumstances of this case, the exception was well taken. The evidence here all indicated a casual difficulty, no former grudge or quarrel between the parties being shown. The homicide was committed in a sudden broil. It appears from the testimony that the wife and children of John Manis (a brother of defendant) and the wife and children of deceased first engaged in a quarrel and difficulty near the cirb of deceased. John, Jim, and Frank Manis had been out on a sale, and came up while the difficulty was going on. John Manis undertook to pacify the parties, took hold of his wife to lead her home, and told deceased's wife to go on home. While they were still quarreling Ward (deceased) came running up from around the corner of the crib close by, with a shotgun. Gracie Ward immediately sprang at him and caught the gun. Sallie Manis (wife of John), according to the State's testimony, also ran in and caught deceased around the neck. Mrs. Ward also closed in with the parties, as did John Manis—all attempting to take the gun from Ward, deceased. They were still struggling over the gun when Jim Manis (defendant) rushed up, caught deceased by the shoulder with his left hand, and presented his pistol at deceased, and shot him in the breast, inflicting a wound from which he died. Defendant's theory at this juncture tends to show that deceased had succeeded in getting loose from Mrs. Ward, while John Manis still had hold of the gun, and was struggling with him for its possession; that Jim Manis then came up and told Ward to give up the gun and he would not be hurt. Ward cursed him, telling him he would kill him, jabbing the gun at him, and Jim jumped to one side away from the muzzle, and fired with his pistol, inflicting a wound in deceased's breast which killed him.

Now, it well be observed that self-defense is rather strongly presented in this case; that deceased was the first one on the ground that exhibited any weapon; that his appearance created alarm, and an immediate effort òn the part of both John Manis and' his (deceased's) own family to disarm him. The real issue in the case was whether or not there was, at the time Jim Manis shot and killed deceased, a real or apparent necessity to do so in order to protect his own life, or the life of John Manis, or some of the Manis family. If there was such real or apparent necessity, then Jim Manis was justifiable in killing him. If there was not, then he was guilty of murder or manslaughter, as the case might be. It may not have been necessary for the court to have given this charge, inasmuch as he had previously given a general

charge on the subject; but when he undertook to group the facts and give a charge on self-defense he should have been careful in the use of the language he employed. Certainly he should not have used language that might he construed by the jury to withdraw entirely, or qualify the effect of the charge on self-defense which was given. In this particular charge, at its conclusion, the court tells the jury, in effect, that if defendant killed deceased under the circumstances above indicated, but not in pursuance of a design theretofore formed by defendant, to acquit him. There was no evidence in the case of any design formed to kill previous to that which may have been formed during the difficulty at the crib, and so the jury could not apply the language used to any former unlawful design on the part of defendant, but they were compelled to look to the circumstances immediately attending the difficulty to determine what design the court meant. Moreover, they were not even informed that this previous design must be an unlawful design. In self-defense, equally with unlawful homicide, the design to kill is formed prior to the act of killing, and the effect of the charge here given was to instruct the jury that appellant would have the right, under the circumstances indicated, to kill deceased, unless he killed him in pursuance of a previous design to kill. So far as this charge is concerned, whatever benefit appellant could hope to derive from it was utterly destroyed by this qualification; or at least, it left the jury in such a confused state as they would not be prepared to make an intelligent application of the charge to the facts proved. In either event, the charge in question was prejudicial to appellant, and for this error of the court the case must be reversed.

We do not think the other assignments are well taken. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.