STEVE RICKS v. THE STATE.

No. 2945. Decided May 17, 1905.

**1.—Murder in Second Degree—Change of Venue—Nearest County.**

Where the venue was changed on the court's own motion, it was not required that he assign any reasons for ignoring the counties of the district nearest the courthouse of the county in which the homicide occurred.

**2.—Same—Continuance—Immaterial Testimony.**

Where the testimony of the absent witness even tended to be against the overwhelming evidence in the case on the point that defendant fired the fatal shot, it could be assumed that such testimony would not have availed him. Neither. could testimony that defendant was intoxicated be material, as that fact was abundantly shown by other witnesses.

**3.—Same—Murder in the First Degree—Charge of Court.**

Where the verdict was for murder in the second degree, a charge on murder in the first degree could not have injured defendant; besides the evidence justified such a charge.

**4.—Same—Manslaughter—Charge Refused.**

Where the evidence showed clearly that if prosecuting witness had used insulting language concerning defendant's relatives that the latter did not resent it by an assault upon said witness upon a first meeting, but that said witness denied the accusation and demanded defendant's authority which the latter refused to give; that they then separated; that some twenty or forty minutes thereafter defendant went to witness' house and fired into the same, killing defendant's sister whom he had also threatened, there was no error in refusing to instruct on manslaughter. Distinguishing Morrison v. State, 39 Texas Crim. Rep., 519.

Appeal from the District Court of Victoria. Tried below before Hon. James C. Wilson.

Appeal from a conviction of murder in the second degree; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*Browne & Bell,* and *J. C. Goode,* for appellant.—The court should have charged the jury in this case upon manslaughter: John Hill v. State, 5 Texas Crim. App., 2; Bob Vincent v. State, 9 Texas Crim. App., 303; W. F. Whaley v. State, 9 Texas Crim. App., 305; Joe Scott v. State, 10 Texas Crim. App., 112; J. W. McLaughlin v. State, 10 Texas Crim. App., 340; William & Robert Eames v. State, 10 Texas Crim. App., 421; B. F. Blocker v. State, 27 Texas Crim. App., 16; John D. Pitts v. State, 29 Texas Crim. App., 374; R. H. Jones v. State, 33 Texas Crim. Rep., 492; Tipp Morrison v. State, 39 Texas Crim. Rep., 519.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment fixed at confinement in the penitentiary for ninety-nine years; hence this appeal.

A brief statement of the facts shows that appellant and deceased were brother and sister; that deceased was the wife of Otto Roeder, and resided some four hundred or five hundred yards from where appellant resided, with his mother and brother and sister. The parties lived some two and one-half or three miles from the town of Runge. On the day of the homicide, in the afternoon, appellant and Mack Roeder (a brother of Otto Roeder) went to Runge; and it is there shown that said parties drank freely of whisky and became intoxicated. On their return home, about a half mile from the town, they ran the buggy against a tree or bush and broke the singletree. In this condition they were overtaken by Harley Little on horseback, who lived in the same neighborhood with appellant. He got off his horse and assisted them in extricating the buggy and mending the singletree; and then exchanged with Mack Roeder; Mack getting on his horse and Harley taking his place in the buggy. They

arrived at the home of appellant a short time before nightfall. Otto Roeder was either there, on their arrival, or came shortly afterwards. After their arrival, a bottle of whisky was produced by Little who handed the bottle to Otto Roeder. Whereupon appellant stated to Roeder that he had been talking about him, and that he had heard in town that he had uttered slanderous remarks about his mother and sister. Roeder refused to drink after this, and returned the bottle, denying the remarks, and asked appellant for his authority. Appellant refused to give his authority. In a short time after this Roeder left for his home, riding behind Harley Little. It is further shown that appellant thereafter went into the house, sat down at the table with his mother, Mack Roeder and others, and, according to some of the State's witnesses continued to abuse Otto Roeder, on account of what he had heard in town. Mack Roeder interfered and told him it was not true; that Otto was a good friend of his. Whereupon appellant abused him. Mack immediately left, going to the house of his brother some four hundred yards distant, and informed the brother what had occurred, and that he expected appellant to be over there directly. Appellant is shown to have gotten his pistol out of a trunk or box, after which he went over to the house of Otto Roeder. The doors of the house were shut. His sister went to the window and poked her head out; he asked her where Otto was; she informed him that he was not there; he told her that it was not true, and according to some of the State's witnesses further told her if she did not take her head out of the window, he would shoot it off. She withdrew her head from the broken window pane, was retiring across the room towards the bed, where her husband was, when appellant fired a shot into the east door. This shot took effect in deceased's left side, inflicting a mortal wound, from which she died the next day. Immediately after this shot, Otto Roeder with a shotgun in his hand ran out of the house by the west door, ran around the corner, and met appellant at the south end of the house, they immediately exchanged shots: appellant missing Roeder, and Roeder's shot taking effect in appellant's arm. Roeder immediately advanced on him, knocked him down with the shotgun, with a lick on his left shoulder. It is then shown they had a struggle over appellant's pistol, which had fallen to the ground. Appellant got it, and in the struggle shot Roeder through the left hand. Roeder succeeded at length in getting the pistol from him, and shot appellant in the breast. He afterwards snapped the pistol at him a number of times, but it failed to fire, and he then beat him over the head with the pistol. It is shown by the testimony of the witnesses that appellant was under the influence of liquor during that evening, and at the time of the homicide. This is a sufficient summary of the facts to present the issues raised.

The venue was changed on the court's own motion from Karnes County, where the homicide occurred, to Victoria County. Appellant objected to this change of venue and reserved thereto his bill of excep-

tions. We have carefully examined the case, and in our opinion the court had full power and jurisdiction to do what he did. The change of venue was made under article 613, Code Criminal Procedure, and the court assigns sufficient reasons under said article for changing the venue. See authorities cited in section 661, White's Ann. Code Criminal Procedure. It was not necessary under said article to assign reasons why the court sent the case to Victoria County, the courthouse of which was considerably farther from the county seat of Karnes County, than the county seats of three other counties named. The article in question gives the district judge full authority in the premises, and it is only necessary for him to assign reasons for changing the venue.; and it is not necessary that he assign any reasons for ignoring the counties of the district nearest the courthouse of the county in which the homicide occurred. This is only required under articles of the code with reference to change of venue by defendant.

Appellant complains because the court overruled his motion for continuance. This motion is mainly based on the absence of Mrs. Ricks, the mother of appellant. But this objection is disposed of, as it is shown, that said witness was brought to court and testified for appellant in the case. It does not occur to us that appellant used due diligence to procure the attendance of Will Ricks; nor does it appear that there was any reasonable expectation that this witness could be had at the succeeding term of the court, had the case been continued, as not even his relatives appeared to know where he was. Besides this, it does not occur to us that his testimony was material. It is said that his evidence was important to show the intoxicated condition of appellant, but this was abundantly proven by other testimony. As to the witness Knowles it does not occur to us that she knew any fact of a controverted character that was important in appellant's defense. In view of the record, we take it that it is beyond controversy that appellant fired the shot which caused the death of his sister (deceased) and testimony which even tended to show the contrary would not have availed appellant in the face of the overwhelming evidence on this point. There was no error in overruling the motion for continuance.

Appellant urges that the court should not have charged on murder in the first degree. The charge on murder in the first degree was really required under the facts of this case on two accounts; first, if appellant intended to kill Otto Roeder such killing would have been murder in the first degree; and under the facts of this case it might have been so, then the accidental killing of Mrs. Roeder would be murder in the second degree. Second, besides this, there was some testimony showing or indicating malice toward Mrs. Roeder, as he told her, if she did not take her head back out of the window, that he would shoot it off. His subsequent firing into the house, where he knew she was, might be characterized as an act regardless of social duty and fatally bent on mischief. So the court might have been justified in charging on murder

in the first degree on this account. However, the conviction was for murder in the second degree, and we fail to see how a charge on murder in the first degree under the circumstances could have injured appellant.

Did the court act without authority of law in failing and refusing to instruct the jury on the question of manslaughter. The only possible phase of the case which would present this question, was the alleged insults by Otto Roeder toward the mother and sister of appellant. The evidence on this subject shows briefly that appellant met deceased, thirty or forty minutes before the homicide, at his own home. That he charged him with this matter, and that Otto Roeder denied the same, and asked appellant for his authority, which appellant refused to give. After this transaction, Otto Roeder left the premises of appellant, went to his own home, some four hundred or five hundred yards distant. Appellant is then shown to have armed himself and gone to appellant's home, and there fired into Roeder's house, and inflicted a mortal wound on his (appellant's) sister. This was from twenty to forty minutes after appellant had met Otto Roeder and charged him with the slander of his mother and sister, which he denied. This case does not come under the authority of Morrison's case, 39 Texas Crim. Rep., 519. In that case the facts and circumstances established that the homicide was committed on a first meeting. True appellant did not kill deceased immediately on meeting him after ascertaining the fact that deceased had been copulating with his wife. However, as soon as he came up, he charged deceased and his wife with copulating, an altercation ensued and appellant shot deceased. If during the altercation between this appellant and Otto Roeder at home of appellant, and before the parties separated, he had shot and killed Roeder, this would have been a parallel case with that of Morrison v. State. Under the uncontroverted facts of this case, this was not a first meeting, and the principle announced in Pitts v. State, 29 Texas Crim. App., 974, applies. Howard v. State, 23 Texas Crim. App., 265; Wollforth v. State, 31 Texas Crim. Rep., 387. While it is true, as contended by appellant, if in the assault he had killed Otto Roeder, and it would have been no more than manslaughter, then his accidental killing of Mrs. Delia Roeder, in the attempt to kill her husband, could have been no more than manslaughter; yet, in order to have reduced the offense to manslaughter, the homicide must be shown to have been committed on the first meeting. Here there was no testimony even tending to show that the homicide occurred on the first meeting; consequently the court was not required to charge on manslaughter.

We do not understand the court's charge predicated on the drunkenness of appellant produced by the recent use of intoxicating liquor to be questioned. We have examined the same fully, and it appears to follow the statute and decisions of the court on this subject, and the requested charges were not called for.

We have examined the record carefully, and in our view, the jury

were authorized under the facts of this case to render the verdict; and we see no reason to set the same aside. The judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]