### REECE VINSON v. THE STATE.

#### No. 4498.  Decided March 17, 1909.

**1.—Murder—Charge of Court—Self-Defense—Serious Bodily Injury—Imperfect Self-Defense.**

The law provides that if an assault is made upon another that does not threaten death or serious bodily injury, the accused, before he can claim perfect self-defense in the killing must have resorted to all other means reasonably proper and effective for the purpose, except retreat, to protect himself from the injury before killing; and if he does not do so and it is shown that there were other means (except retreat) than a cutting with a knife, then he must

resort to such other means before killing deceased, and he can not use greater force than appears to him to be necessary at the time.

**2.—Same—Charge of Court—Case Stated—Defendant's Standpoint.**

Where upon trial for murder the evidence showed that defendant in a difficulty with deceased cut him with a knife and killed him, the court should have charged in applying the doctrine of imperfect self-defense that if defendant believed at the time from his standpoint that he could have protected himself by other means than stabbing deceased, then he would be guilty of some grade of homicide; and where the court placed an unwarranted limitation in his charge upon the right of self-defense, and limited the doctrine of necessity to what may have appeared to be known to others than defendant, the same was reversible error.

**3.—Same—Charge of Court—Self-Defense—Intent to Kill. ·**

A charge of the court in a trial for murder which predicates defendant's right of self-defense against serious bodily injury upon the fact that defendant did not intend to kill, is incorrect; if the accused was defending against an assault threatening serious bodily injury, from his standpoint, he is entitled to an acquittal regardless of his intent to kill.

**4.—Same—Charge of Court—Aggravated Assault.**

Where upon trial for murder there was evidence that the difficulty between defendant and deceased occurred upon a sudden impulse of passion, and that the knife used by defendant was an ordinary pocketknife, the court erred in failing to charge on aggravated assault.

Appeal from the District Court of Angelina. Tried below before the Hon. Jas I. Perkins.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Townsend, Jr.,* for appellant.—On question of limiting defendant's right of perfect self-defense: Rea v. State, 46 Texas Crim. Rep., 453; Arto v. State, 19 Texas Crim. App., 126; Bell v. State, 17 Texas Crim. App., 538; Ashworth v. State, 19 Texas Crim. App., 182; McCandless v. State, 42 Texas Crim. Rep., 58; Price v. State, 46 Texas Crim. Rep., 80; Harrison v. State, 48 Texas Crim. Rep., 44, and cases cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter and his punishment assessed at four years confinement in the penitentiary.

The evidence shows that appellant killed Lee Bise by cutting him with a knife. The evidence is quite conflicting. The State's testimony, in substance, shows that deceased was working for the Lufkin Foundry and Machinery Company. One of the main witnesses, Floyd Pullen, testified, in substance, as follows, and his testimony presents the State's theory of this case, and we here state it: "I know the defendant. Deceased and defendant were at a show on the night of the difficulty. I saw the difficulty that took place between them. It occurred on the outside of the tent. Deceased and I walked up

to the tent, and appellant walked up to Lee Bise, the deceased, and deceased caught him around the shoulder and says, 'Reece are you going to the show?' and defendant says, 'Go on, God-damn you, and don't f——k with me,' and deceased says, 'You need not get on your head about it.' Reece says, 'I will get on my head as much as I damn please,' and deceased says, 'You will; I will be damned.' And Joe Miller stepped in between them and pushed deceased back and says, 'Don't you boys be fussing, you will be fighting in a minute,' and he told deceased to come on and let's go in the show, and Joe Miller, deceased and myself started in the show ·and deceased says, 'I am not scared of you.' And Reece says, 'Nobody wants you to be afraid of me,' and called deceased a son-of-a-bitch, and deceased says, 'I will not take that,' and he turned back and Reece was coming toward deceased and deceased told him, 'I will not take that off of you,' and they started to fighting and the crowd come in between me and deceased and I couldn't see them, and when I got to deceased he was falling and appellant came right out by me. I was in four feet of them when they commenced striking at each other. I don't know that either one started at each other first; they were both going towards each other. When appellant called him a son-of-a-bitch he was coming towards deceased, going towards the show. I could not tell which one struck at the other one first. I did not see anything in the hand of deceased; he did not have anything in his hands; he didn't have a stick or beer bottle or knife. I couldn't see anything that appellant had in his hands. When I got to deceased he was falling; he had been cut; he was falling towards the ground and I went to him."

This presents the State's case with this addition: The sheriff testified: "Sometime during the night of the difficulty or early the next morning, I couldn't say which, appellant gave me a knife. I had the knife in my office laying there on the desk, and I went to look for it yesterday and couldn't find it, and I don't know where the knife is. It was what I would call a physician's knife, a long knife. The blade of the knife was between two and one half and three inches long. The knife looked like what I would call a physician's knife."

Appellant testified ·that he was listening to the band play at the show tent, when "deceased walked up behind me and caught me around the waist and lifted me up and dropped me on the ground; and I asked him what did he mean by that, and he says, 'I don't reckon it is any of ·your damn business,' and I says, 'I don't want you to do it any more, and in the meantime while we were talking the band went back to the little tent, and I turned and walked over to the other tent, and in a few minutes he walked up and commenced cursing at me again and called me a son-of-a-bitch. Deceased said, 'God-damn you, you son-of-a-bitch,' and hit me a glancing lick, and he kept hitting at he, and I was backing off and we got in the guide-

rope. He was hitting me when I was backing, hitting me in the face and on the head, and when we got to the guide rope I went under the rope, and when he got to the rope I caught hold of it and stopped. When so pressed I cut him; I was just cutting to keep him off of me. I just cut him one time. Before the night of the trouble I did not know deceased personally. Knew him when I saw him. Never had had any ill-will or difficulty with the deceased before and don't know that I ever spoke to him. Only struck deceased with my knife one lick. When I struck him I did not intend to kill him. The knife I had was just a medium size knife, the blade was not longer than one and one half or two inches long."

Appellant in his brief insists the court erred in the following charge: "The killing of another person is in self-defense and justifiable when committed in the protection of the person of the party killing against any unlawful and violent attack then being made by the party killed, but if the attack being defended against is not being made with a deadly or dangerous weapon, or is not such as threatens death or serious bodily injury to the person thus attacked, then the person so attacked, before he can claim perfect self-defense for killing, must have resorted to all other means reasonably proper and effective for the purpose, except retreat, to protect himself from the injury before killing, and if he does not do so, and it is shown that there were other means (other than retreat) which would have been reasonably proper and effective to protect himself from the injury, and he failed to resort to such other means, then the killing, because of the use of such greater force than was necessary, would not be in perfect self-defense, but would be manslaughter." The principle in this charge has been expressly approved by this court in the case of Freeman v. State, 40 Texas Crim. Rep., 545. Appellant cites us to a long array of authorities, among others, Ennis v. State, 38 S. W. Rep., 998. None of these authorities, however, we think are in point. In this case we have deceased assaulting appellant with his fist. When so assaulted the law of this State is properly embodied in the charge complained of. As early in the jurisprudence of this State as the case of Kendall v. State, 8 Texas Crim. App., 569, a charge to this effect was laid down as proper. Again in the case of Hunnicutt v. State, 20 Texas Crim. App., 632, the same doctrine was approved. The statute of this State provides that if an assault is made upon another that does not threaten death or serious bodily injury, before he can claim perfect self-defense of killing, he must have resorted to all other means reasonably proper and effective for the purpose, except retreat, to protect himself from the injury before killing, and if he does not do so, and it is shown that there were other means, other than retreat, than cutting deceased with a knife, then he must resort to such other means before killing deceased, and under such circumstances he can not use any greater force than appears to

him to be necessary at the time. The trouble with the charge is, it lays down an abstract proposition correctly, but it limits the doctrine of necessity to what may appear to be known to other people. Appellant is entitled to a charge telling the jury that if he (appellant) believed that he could have protected himself by other means than stabbing the deceased, then he would be guilty of some grade of homicide. Certainly, it is not the law of this State that because subsequent events develop the fact that appellant could have protected himself against serious injury by resorting to other means than stabbing the deceased, that this fact should make him guilty in the eyes of the law; but the jury must pass upon the matter from appellant's standpoint. It follows that the court placed an unwarranted limitation upon the right of self-defence in not so defining appellant's rights. Under the law of this State the punishment of a defendant must be and is predicated upon his intent and his felonious purpose, if any, at the time he acts, and never is predicated upon what appears to be the real facts in the light of subsequent developments. It is his intent, and his alone, that the law makes him punishable for. It follows that the court's charge was in error in the matter pointed out. See Richardson v. State, 7 Texas Crim. App., 486; Weaver v. State, 19 Texas Crim. App., 547; Dyson v. State, 14 Texas Crim. App., 454; Pryse v. State, 113 S. W. Rep., 938; McGlothlin v. State, 53 S. W. Rep., 869; Lilly v. State, 20 Texas Crim. App., 1; Sims v. State, 36 Texas Crim. Rep., 154, 36 S. W. Rep., 256; Ross v. State, 10 Texas Crim. App., 455; Hopkins v. State, 53 S. W. Rep., 619; Woodring v. State, 33 Texas Crim. Rep., 26; Morrison v. State, 39 Texas Crim. Rep., 519, 47 S. W. Rep., 369; 3 Greenl. Ev. (16th ed.), 125, sec. 117; 1 Bishop's Cr. Law, 7th ed., secs. 857-8-9-60.

The court refused the following charge asked by appellant: "In this case, if you believe from the testimony that defendant cut deceased with a knife, as alleged in the indictment, but that defendant did not intend to kill deceased, but only cut him to prevent deceased from doing him, defendant, some serious bodily injury, as viewed from his, defendant's, standpoint, then you will find the defendant not guilty." This charge is not correct in that it predicates appellant's right of self-defense from serious bodily injury upon the fact that defendant did not intend to kill when he stabbed deceased. If appellant was defending against an assault threatening serious bodily injury, from his standpoint, he is entitled to an acquittal, regardless of whether or not he intended to kill at the time he stabbed deceased.

Appellant insists the court erred in failing and refusing to charge on the issue of aggravated assault and battery. The testimony of appellant shows that the difficulty occurred upon a sudden impulse of passion, and in addition thereto the evidence from the defendant's standpoint shows that the knife used was an ordinary pocket knife,

with a blade one and one half or two inches in length, and suggests the issue of aggravated assault from that standpoint.   See articles 717 and 719, Penal Code; Thompson v. State, 24 Texas Crim. App., 383; Martinez v. State, 35 Texas Crim. Rep., 386; Connell v. State, 46 Texas Crim. Rep., 259, and various other authorities. could be cited.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*