HENRY HELMS v. THE STATE.

No. 12113. Delivered February 27, 1929.
Rehearing denied April 17, 1929.
Second motion for rehearing denied June 19, 1929.

204

The opinion states the case.

*J. Lee Cearley* of Cisco, for appellant.

*J. Frank Sparks, Sterling Halloway, Stinson Hair, Brooks & Duke* and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, robbery with firearms; penalty, death.

On December 23, 1927, shortly after the noon hour, the First National Bank of Cisco was robbed and twelve thousand dollars taken from its vault. The four participants in this robbery were identified as Robert Hill, Marshall Ratliff, Louis Davis and appellant, Henry Helms. Ratliff was disguised in a Santa Claus garb. All were heavily armed and in an exchange of shots with officers and citizens, Davis and two officers were seriously wounded. Others were also wounded. The record does not show what, if any, fatalities resulted. Davis was abandoned by his fleeing companions, whose car had become disabled from shots through one of its tires. All the stolen money was likewise abandoned and afterwards recovered by its owner. In making their escape appellant and his companions used two little Cisco girls as a screen and protection from the shots of officers and citizens, forcing these little girls to accompany them to a point about five miles from Cisco where their car was abandoned. Without repeating the exciting details of the long chase after the alleged robbers, which lasted for several days

and extended over some four or five counties, suffice it to say that appellant was finally captured at Graham, Texas, some 150 miles distant from the scene of the robbery.

Without a tedious recitation of all the State's evidence, it was, we think, abundantly sufficient to show appellant's participation in the robbery and the shooting which followed. There was no evidence offered of an alibi. In fact it may, we think, be truthfully stated that no defense of any kind was attempted, further than what, if any, arose from the proven facts of the alleged robbery.

It is complained in substance that the Court's charge makes an assault too prominent. The charge appears to be a literal quotation of articles of the statute applicable to the offense charged. We are not able to perceive how the trial court could correctly instruct the jury without giving in charge the statute upon which the prosecution was based. Such a charge being necessary, the complaint is plainly without merit.

The appellant did not testify. The Court gave the customary charge that such failure should not be considered as a circumstance against him. To this charge the appellant excepted. It has been uniformly held that the giving of such a charge is not error. Fulcher v. State, 28 Tex. Crim. App. 473; Willingham v. State, 62 Tex. Crim. Rep. 55; Branch's P. C., Sec. 377.

Nor do we think the appellant's criticism of the Court's charge as to principals possesses any merit. After charging the language of the statute as to the law of principals, the Court instructed the jury as follows:

"I charge you that Henry Helms alone is on trial, and in this connection you are further charged that the said Henry Helms cannot be held responsible for the unlawful acts, if any, of any other person or persons, unless you believe from the evidence beyond a reasonable doubt that he, the said Henry Helms, was present with such other person or persons, and knowing of his or their unlawful intent, if any, aided by acts or encouraged by words or gestures such other person or persons, in the commission of the offense charged in this indictment, if any offense was committed; and unless you so believe beyond a reasonable doubt you will acquit the defendant."

This was more than an abstract statement of the law, as contended by appellant. It fairly and we think pertinently presented the question in such way as to give appellant all that he was entitled to under the facts of the case.

By Bill of Exception No. 1 appellant presents the point that juror Claud Peck was related within the prohibited degree to the police officer Bedford, who was shot during the robbery of the Cisco bank. It appears that the juror's brother married a sister of said Bedford. The bill presenting this matter details all questions propounded to this juror of his voir dire examination. These disclose that he fully, and with apparent fairness, answered all questions propounded by State's counsel and that counsel for appellant failed to interrogate the juror, accepting him without asking any questions. Appellant was not deceived by any answer of the juror. He simply took his chances with this juror, apparently believing him to be qualified and fair. It was said in Baker v. State, 4 Tex. Crim. App. 229, that "a new trial will not be granted on account of the disqualification of a juror, though unknown, at the time he was taken upon the jury, to the accused and his counsel, unless it be made to appear that the disqualification could not have been discovered by making proper inquiry." See also Jones v. State, 14 Tex. Crim. App. 85; Branch's P. C., P. 565. While the bill shows that appellant was unaware of this relationship until after his acceptance of the juror, the announcement of a rule which required the granting of a new trial under the above recited facts would be neither a fair nor a wise one. Our discussion of this question is not to be understood as an implied holding that the above recited relationship was within the prohibited degree.

By other bills of exception appellant presents the question of alleged error in refusing to sustain appellant's challenges for cause to a number of jurors. Most, if not all these jurors, fully qualified on their voir dire, though some of them stated they had formed an opinion from newspaper reports that would take evidence to remove, but they could and would lay same aside and try the case fairly and impartially. A sufficient answer to all of appellant's contentions respecting these jurors is that none of them were forced upon him, none of them served as jurors, and appellant still had at his disposal unused preemptory challenges when the last of these was up for examination. No objectionable juror was forced upon appellant, but on the contrary, all chosen were accepted by appellant at a time when he could have by the exercise of preemptory challenges stricken them from the list. If any of these jurors were disqualified, which is extremely doubtful, the error of the Court in overruling appellant's challenges for cause was harmless under the uniform holdings of this Court. Rothschild v. State, 7 Tex. Crim. App. 540; Ellis

208

v. State, 154 S. W. 1012; Branch's P. C., Secs. 542 and 543, for full collation of authorities.

It is shown by bill of exception No. 2 that some of the jurors after being impaneled referred to a report that appellant and others of the participants in the alleged robbery were ex-convicts. Testimony taken on motion for new trial discloses thàt eight of .the jury heard no such reference. Of four whom such matter might affect, we quote from the testimony of that one which presents the matter in its most favorable light for appellant:

J. L. Brown: "I do not remember who was the first person who made mention of the fact that the accused had heretofore been convicted of a felony. That was mentioned, that is not during the deliberations but before that. It was while I was on the jury after some of them had been empaneled, someone mentioned that and I told them that we must not discuss those facts as they were not in evidence. . . . They did mention that fact as to newspaper reports. That was all any of them claimed to know. . . . In fact at the time I made mention of that they were discussing Ratliff, and some of them made mention that they thought all of them had been to the penitentiary except Davis that was concerned in this affair, and I said 'Here boys, that is a question we should not discuss, as we are not deliberating on this evidence and we should not do that, as it is wrong and if we ever should reach a verdict there might be a reversal.' . . . I do not know that Helms' name was mentioned. The newspaper reports of the robbery was what was mentioned. . . . As to whether they were discussing the defendant's case, that was all that was said. They mentioned the report that the whole group except one had been in the penitentiary, and one of the boys said 'Well that is not a fact or anything of that kind, but it is just a newspaper report.' That was about the sum of what was said."

The trial court heard all the evidence and entered judgment denying the appellant's motion to set aside the verdict for the alleged misconduct. This judgment is presumptively correct. Any conclusion deducible from and resting upon the evidence before him which the trial court could have made, will be presumed by this Court to have been made in support of said judgment. Taking the testimony as a whole, we think it inferable therefrom that the statements about appellant purported only to be hearsay and rumor based upon newspaper accounts; that they were not stated as facts, that only a casual reference was made to them and that at a time before the jury began deliberating, being in fact before it was finally com-

pleted. The rule governing a matter of this kind was stated by Judge Ramsey in the following language:

"We think the true rule is that where, as in this case, the testimony supports the verdict, and the charge of the court properly submits the case to the jury, that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried according to law where the conviction is supported by the testimony, unless the court may fairly and reasonably see in the light of all the circumstances that such reference and discussion did or might have prejudiced the appellant's case." Smith v. State, 52 Tex. Crim. Rep. 351.

As already indicated, the evidence is overwhelmingly sufficient to show appellant's participation in the robbery. The charge appears to fully and fairly present the case to the jury. No bill of exception appears in the record to the admission or rejection of evidence, nor to the argument or conduct of attorneys for the State. The trial appears to have been fair. To our minds the record is bare of a single extenuating circumstance in favor of appellant. The evidence shows a plan, conceived with deliberation and executed with cold-blooded precision, to rob and to kill if it became necessary. We do not think the casual mention of a hearsay newspaper report among some of the jurors constitutes reversible error. Particularly is this true of a case where the verdict seems plainly responsive to the evidence, and the record as a whole indicates a fair and impartial trial. For other cases tending to sustain this view, see: Morrison v. State, 47 S. W. 369; Coffman v. State, 165 S. W. 939; Cooper v. State, 162 S. W. 364; Baines v. State, 66 S. W. 847; Jack v. State, 26 Tex. 4; Austin v. State, 42 Tex. 359; Anshicks v. State, 6 Tex. Crim. App. 538; Cox v. State, 7 Tex. Crim. App. 1; Allen v. State, 17 Tex. Crim. App. 645; Jack v. State, 20 Tex. Crim. App. 660; Cox v. State, 28 Tex. Crim. Rep. 95; Ray v. State, 35 Tex. Crim. Rep. 359.

A ponderous bill of exception consisting of 345 pages presents the alleged error of the Court in refusing to change the venue of this case from Eastland County. Without tediously detailing the testimony set out at great length in this bill, suffice it to say that an issue was made and testimony pro and con was heard by the trial court. This bill is, qualified to show that only 104 jurors were examined, from which number twelve were selected to try the case and that "at no time was the defendant forced to accept a juror who

was not of his own choosing." Unless it is clear that the trial court has abused or arbitrarily exercised his judicial discretion, his action in refusing a change of venue will be sustained on appeal. Dupree v. State, 2 Tex. Crim. App. 613; Barnett v. State, 176 S. W. 583; Branch's P. C., Sec. 299. Ample evidence existed in our opinion to sustain the Court's action in this regard, and the record as a whole fails to show any abuse or the arbitrary exercise of the judicial discretion properly lodged in the trial court, and in our opinion no error is shown by this bill.

No errors appearing, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the motion for rehearing and oral argument counsel for the appellant earnestly contends that errors were committed upon the trial of the appellant which should result in a reversal of the judgment of conviction. The complaints of the rulings of the trial court are the same as those advanced on the original hearing and to which this court, having fully in mind the fact that it was charged with the painful duty of determining questions of law involving the life or death of an individual, gave its most careful and painstaking attention. Its opinion expressed upon the original hearing, after consideration of the record in the light of the motion for rehearing, is the same. Writing at length upon the various points presented would be but a reiteration.

Two days before Christmas, in the town of Cisco, during business hours, four men entered a bank and robbed it of money by the use of firearms. One of the employees who were put under restraint at the point of a pistol was a woman. Among the persons in the bank were two young girls, ten and twelve years of age. In attempting to escape with their booty after their presence was discovered firearms were used. Two of the officers of the bank were wounded and two police officers were shot down. The robbers forced the two little girls into an automobile in which they fled, using the persons of the girls as protection against shots from the pursuing officers. One of the robbers was dressed in a garb personating Santa Claus. The evidence identifying the appellant as one who took an active part in the robbery, using and firing firearms, is abundant and practically without conflict. The appellant did not testify. No defensive

theory was presented. There are no mitigating facts. The only suggestion of mitigation is the fact that anticipating the robbery firearms had been provided by the bank for the purpose of resisting in the event of an attempted robbery.

The legal questions raised on appeal, in our opinion, have been properly decided. In the record there is nothing perceived which would warrant or justify this court in annulling the verdict of conviction.

The motion is overruled.

*Overruled.*

### ON SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant insists that we erred in our disposition of this case originally and upon his motion for rehearing, in certain matters set out in the request for leave to file a second motion, and contends that we did not discuss some of the questions raised. It is true that we did not, but examining those not discussed, we observe that we did not write of some bills which failed to bring forward questions of importance in the particular case, and failure to discuss which in nowise affected the propriety of its disposition, or any question of jurisprudence or practice in this State. Each bill in the record was examined, weighed and its materiality considered in the light of the whole record, its facts and issues. We have again reviewed the propositions stressed in the application, but believe none of them point out any matter of materiality which would incline us to believe that same should have been discussed when the case was regularly before the court. We find no matter which was overlooked which should have been discussed in the opinions heretofore written.

We regret to be compelled to deny appellant's request.

*Overruled.*