Pauline **SULLIVAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 35313.

Court of Criminal Appeals of Texas.

Feb. 13, 1963.

Rehearing Denied April 3, 1963.

Robinson, Wilson & Graham by James K. Graham, Abilene, for appellant.

Leon B. Douglas, State's Atty., Austin, for State.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, 5 years.

The evidence shows that the deceased died as the result of a stab wound in the chest inflicted by the appellant with a knife.

The homicide occurred at the front of the home of appellant's mother. The appellant and her child were living there also. She had gone out with the deceased several times and he was among those present at the house from about 4:30 P.M. until the homicide occurred about 11:30 P.M.

No witness testified to having seen the appellant stab the deceased, and the knife was not found.

When an officer arrived and found the dead man he inquired of those present if they had seen or heard anything that went on outside. The appellant "* * * said she didn't know what happened; hadn't heard anything either." When the officer said the man was dead, the appellant fainted. When she came to the officer asked the appellant if she stabbed him. She said "Yes, but I didn't mean to hurt him. * * * I just slapped at him with that knife."

All of the evidence shows that there was no trouble until about 11:30 P.M., at which time the appellant made known that she wanted the deceased to leave.

A witness for the state testified that the appellant told him to get out of the house, in language that need not be stated here, and he started backing out with his hands raised saying "Okay", and she was hitting him as he was just off the porch.

Another witness for the state testified that the appellant was trying to put the deceased out of the yard and she heard her say "Get out. I done asked you to get out and I mean for you to get out. Get out of my mother's yard." A lick was heard and shortly thereafter the deceased asked to be taken to the hospital.

The appellant testified, and her voluntary statement or confession was introduced in evidence.

She testified that the deceased wanted her to go out with him, and she didn't want to go; that she asked him to go home and leave her alone, but he just stayed around and continued to try to get her to go with him and she kept saying "No"; that he was drinking; had drunk some wine and some beer that day.

She testified that about two weeks before the killing she told the deceased she didn't want to go with him because she didn't want any trouble from his wife, Nate, at which time deceased told her "* * * he wasn't going to stand no quitting." She

further testified that about noon on the day of the homicide she saw deceased hit his wife and knock her down three times.

Appellant's version of the killing was that the deceased pulled her out the door on to the porch, saying he wanted to talk to her; that he asked her why she didn't want to go "and so he snatched me off the porch. * * * he had me by the right hand and he jerked me off the porch * * *"; when she was "just a little piece from the porch," he slapped her; "He just hit me up the side of the head real hard with his hand * * * it made my ears ring on the inside. * * *

"Q. And, at that time, did he still have ahold of your right arm?

"A. Yes, sir.

"Q. And what did you do at that time?

"A. Well, I just went and got my knife and hit at him like that. (Indicating)

"Q. All right. Now, when you reached and got your knife, where was that knife?

"A. I had it laying up against my breast * * * at the edge of the top of the brassierer * * *

"Q. All right. And how long was it from the time he hit you until you hit at him with the knife? * * *

"A. Well, it wasn't much longer after he hit me."

Appellant further testified that she had no intent to kill or hurt the deceased; that she was hitting at him with the knife because she was scared; "I was scared he may beat me up like he did Nate. Scared he would beat me. * * * I just didn't want him to hit me anymore."

Two grounds are urged for reversal, both of which relate to the court's charge.

The first point is "The trial court erred in limiting appellant's right of self-defense to a situation where she had no intent to kill."

The court properly stated the law of self-defense against an unlawful attack giving rise to a reasonable apprehension of death or serious bodily injury.

The objection was addressed to the paragraph of the charge applying the law of self-defense wherein the court charged: "* * * if you believe that, acting upon such reasonable appearance of danger or fear of death or serious bodily—, if any, at the hands of the said Walter Lee Moring, the Defendant, Pauline Sullivan, reached into her blouse and pulled out a knife, and *without any intent to kill the said Walter Lee Moring,* cut the said Walter Lee Moring, with a knife, from which he died, or, if you have a reasonable doubt thereof, you will find the Defendant Not Guilty of any Offense."

The second contention is "The trial court erred in refusing to charge the jury on appellant's affirmative defense of relieving herself from illegal restraint."

 Assuming that the questions are properly before us, these complaints as to the charge, if valid, do not call for reversal of the conviction unless the error in the charge was calculated to injure the rights of the defendant, or deprive her of a fair and impartial trial. Art. 666 C.C.P.

We are in accord with the holdings in Vinson v. State, 55 Tex.Cr.R. 490, 117 S.W. 846, and Manis v. State, 41 Tex.Cr.R. 614, 58 S.W. 81, cited by appellant, which are to the effect that intent to kill or formed design to kill does not foreclose the right of self-defense against an assault threatening death or serious bodily injury.

The appellant repeatedly denied any intent to kill or harm the deceased. Although she did not claim fear of death or serious bodily injury, it was upon the appellant's testimony alone that the issue of self-defense was submitted.

The court tracked the defendant's version of the killing in the instruction first complained of. In view of her testimony, the error was not such as to call for reversal. Art. 666 C.C.P.

The second complaint cannot be sustained because the evidence did not raise the issue. The appellant did not testify that she stabbed the deceased in order to free herself from his hold upon her arm and there was no testimony from other sources raising such issue. Matterson v. State, 142 Tex.Cr.R. 250, 152 S.W.2d 352, cited by appellant, has no application under these facts.

The evidence is sufficient to sustain the conviction and we find no reversible error.

The judgment is affirmed.