MINNIE MATTERSON V. THE STATE.

No. 22671. Delivered February 9, 1944.

The opinion states the case.

.C. C. Denman, Geo. S. Meisenheimer and Jack Varner, all of Nacogdoches, and H. H. Wellborn, of Henderson, for appellant.

Ernest S. Goens, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of five years in the penitentiary upon a conviction for murder with malice. The original opinion affirming this case is withdrawn and the following now becomes the opinion of this court:

This is the third appeal bringing this rather unusual case for our consideration. For a more complete statement of the facts of the case than will be herein given, see the opinion in the first appeal: (142 Texas Crim. Reports, 250) 152 S. W. (2d) 352. The opinion in the second appeal will be found in (143 Texas Crim. Reports, 635) 160 S. W. (2d) 960. The record now before us contains some additional evidence upon the issues raised, but without raising any additional questions to those discussed on the first appeal. There are no bills of exception, and the only consideration we are called upon to give is that found in the exceptions to the court's charge.

The first exception is as follows: "Defendant excepts to paragraph 8 because the evidence does not raise the issue of self defense against a felonious attack. Because it assumes defendant did shoot Rufus Watkins, and because it is upon the weight of the evidence, and because the charge informs the jury that defendant did shoot deceased."

The concluding exception is as follows: "Defendant excepts to the charge as a whole because it nowhere submits self defense and defense against illegal restraint as against a nonfelonious or a milder attack than one creating a fear of life or serious bodily injury in the mind of defendant as raised by her evidence."

The appellant, testifying in her own behalf, enlarges upon the evidence heretofore given by explaining what the deceased had reference to as he refused to let her out of the truck until she promised him that she would not "cheep what happened the other night." According to her testimony, the deceased and her husband had been together during the day and had procured a gallon of whisky, a part of which they proceeded to drink in the home of appellant. This occurred several days prior to the date of the shooting. Some time before midnight, appellant's husband became so drunk that he went to sleep, while deceased remained on his feet in company with appellant. While in the yard, he proposed a party between themselves, which appellant declined. Whereupon, he shoved her backward and caused her head to hit a rock, from which she became unconscious. Before daylight, she regained consciousness and found herself two and one-half miles from her home on the side of a mountain. At daylight, she went to the home of her son-in-law, where she remained for another day in bed before returning to her home. Her husband remained drunk for several days and, as we understand it, until long after the shooting. The wound inflicted on her and the mistreatment given her is described as being severe. She denies ever having had any relationship with the deceased or other difficulty with him, but says that she didn't like him because he drank with her husband so much.

Detailing the particular occurrence, appellant said that when deceased stopped the truck to let her out, as she requested, his right hand was on the gearshift and his left hand on the wheel. At this time he made the reply: "Like hell I will, unless you promise you won't cheep what happened the other night." Twice again she asked him to let her out but instead, she testified, "he reached at my throat and told me to promise and he took this hand over here, this hand here, from the steering wheel

and reached for my throat and I reached for my gun to protect myself from Rufus Watkins. I didn't want another beating at his hand." She then stated that the deceased grabbed the gun and it went off. Testifying further, she said: "When he jerked it from me, he said, 'I'll kill you, God damn you,' but it wouldn't fire." She said he never did turn her loose until he got the gun. She also said that she didn't intend to shoot him when she drew the gun from her pocket "but I wasn't going to be killed or take a beating from him. He was the meanest man I ever saw." She said also that she was scared.

Based on the foregoing statement by the appellant as a witness in her own behalf, the court gave a charge on the issue of self defense "against any unlawful and violent attack, causing an apprehension of death or serious bodily injury at the hands of the assailant."

Considerable attention is devoted by appellant in her brief to the tenth paragraph of the charge, which reads as follows:

"You are further charged that if you believe from the evidence beyond a reasonable doubt that at the time the defendant obtained her pistol the deceased had grabbed her by the arm and was by words and actions on his part threatening her and that she reasonably believed, as viewed from her standpoint at such time that her life was in danger or that she was in danger of serious bodily injury and under such circumstances the deceased was shot, you will find her not guilty."

The error in this charge is apparent. It shifted the burden of proof to the party on trial, but the exception taken to it does not reach the defect. If the court's attention had been called to it, no doubt he would have corrected his error. The objection that it was on the weight of the evidence will not suffice.

Paragraph No. 11 of the court's charge reads as follows: "You are charged that if you find and believe from the evidence that the defendant fired her pistol, if you have found and believe beyond a reasonable doubt that the defendant did fire the pistol, for the purpose of extricating herself from the grasp of the deceased and that at such time she was in fear of her life or serious bodily injury, or that it reasonably appeared to her, as viewed from her standpoint and her standpoint alone that it was necessary to obtain the pistol under the circumstances to protect herself, you will find the defendant not guilty."

It will be noted that this charge relates to the time the defendant grabbed her gun. Upon a further consideration of the evidence, it appears that this was before deceased actually made the threat to take her life. An error, therefore, appears in the charge because the court failed to observe the ruling of this court in the opinion on the first appeal (Matterson v. State, 142 Texas Crim. Rep. 250, 152 S. W. (2d) 352), wherein it was held that she was entitled to a charge on her right to extradicate herself from an unlawful restraint. This is independent of any fear of serious bodily injury or death. The clause "and that at such time she was in fear of her life or serious bodily injury" changes the meaning and takes from her the right to use such force as is necessary to extricate herself unless she did have such fear. The word "protect" should have been "extricate" in order to carry the proper meaning.

We have carefully examined the charge and find no grounds for the complaint that it assumes the defendant did the shooting or that it was upon the weight of the evidence. The matters referred to in appellant's brief cannot be so construed.

Appellant proved a good reputation by many witnesses who had known her as long as forty-five years. The State rebutted this testimony by others in equally as good position to know as those who testified in her behalf. The jury found her guilty of murder with malice, which may be implied from the circumstances of this case. This court can consider only the questions of law which are presented by the record.

For the error in the court's charge, herein discussed, the motion for rehearing is granted and the judgment of the trial court is reversed and the cause is remanded.