## MINNIE MATTERSON V. THE STATE.

No. 21650. Delivered June 18, 1941.

The opinion states the case.

*Jack Varner, Geo. S. Meisenheimer,* and *C. C. Denman,* all of Nacogdoches, and *H. H. Wellborn,* of Henderson, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a term of thirty-five years.

It appears from the record that on the 12th day of November, 1940, the deceased, Rufus Watkins, and his brother-in-law, Grady Birdwell, were engaged in hauling wood on a truck from a mountain located about two miles north from the town of Cushing to the home of Major Creel, who resided in said town. They had made three trips that morning and were going back in the afternoon. When they left town, one, Jim Fuller, a kinsman by marriage to the deceased who also lived beyond the mountain, got into the truck with them to ride at least part of the way to his home. When they reached the mountain, they saw the appellant in the road. She was walking up the mountain. The deceased stopped his truck and invited the appellant to get in the truck, which she did. Mr. Birdwell, who had been sitting on the seat with the deceased, got into the rear of the truck while Mr. Fuller stood on the fender. At the time appellant was getting into the truck she remarked to Mr. Fuller, "Say nothing about my being up here," to which the witness replied, "I reckon not." After she had entered the truck they drove approximately 150 yards when the deceased began to stop it. The witness Fuller heard appellant say that she was going to "take this trail." At this time Fuller stepped off the fender, and it was then that he first saw a gun in her hand. He walked around the truck, out of sight, and the gun fired. He heard Watkins holler, "Oh," and appellant got out of the truck and walked away. The wounded man also got out with the pistol in his hand and remarked, "I am a dead man."

The State's two main witnesses, who were present at the time, heard no conversation or argument of any kind or character between the appellant and deceased before the fatal shot was fired. The road up to the top of the mountain was very steep and rocky and the truck made considerable noise.

Mr. Holsomback testified for the State that on the forenoon of the day of the alleged offense he sold to appellant five 25-caliber automatic shells. She had a flash-light which was out of commission and asked him to repair it, but he was unable to do so.

The deceased died about a week later as a result of the gun-shot wound.

The foregoing is a brief statement of the salient facts proven by the State.

Appellant took the witness-stand and testified in her own behalf. Her testimony coincides with that produced by the State up to the point where she got into the truck on the seat beside the deceased. She testified that he said to her, "I looked all over town for you and George Kinney but couldn't find either one." After the truck reached the top of the mountain it turned west. She then asked the deceased to let her out. When the truck stopped, he caught her wrist and said, "Like hell, I will let you out, not until you promise not to cheep what happended the other night." She again asked him to let her out and was trying to pull loose but he would not release her, telling her that she had to promise him not to "cheep" what had happened the other night and told her that he would choke her half to death. She then reached into her pocket for the pistol and when she came out with it, he grabbed it. A scuffle ensued and the gun fired. She could not tell who pulled the trigger. When the pistol fired, she managed to open the door of the truck and back out, but he had obtained possession of the pistol and retained it.

Bill of Exception No. 1 reflects the following occurrence: After the State and the defendant had introduced their evidence in chief, the State called Mrs. Watkins, wife of the deceased, and propounded to her the following questions and received the following answers, to-wit:

"Q. What is your name? A. Myrtie Watkins.

"Q. You were Myrtie Birdwell before you married? A. Yes.

"Q. Is your husband, Rufus Watkins, living or dead? A. Dead.

"Q. How old was he when he died? A. 41.

"Q. How many children do you have? A. Four.

"Q. Boys or girls? A. All girls, and are young."

Appellant objected to the first four questions and the answers thereto on the ground that they were not in rebuttal of any evidence offered by the defendant, did not tend to prove any issue or shed any light upon any fact at issue but was offered for the purpose of inflaming the minds of the jury and prejudice them against her. The court overruled the objection, to which appellant excepted, and at the conclusion of the testimony, appellant requested the court to withdraw it from the jury, which request was also refused and appellant again excepted.

There was testimony from other sources that the deceased was dead. The testimony that he was forty-one years of age at the time of his death, as well as the fact that the witness was the surviving widow of the deceased and that her maiden name was Myrtie Birdwell, while immaterial and irrelevant, would not require a reversal of the judgment of conviction. The last two questions and the answers thereto, which were more vicious and more prejudicial than the preceding four questions, were not objected to by the appellant. However, if she had objected thereto, the court no doubt would have sustained the objection. As thus presented, the bill fails to reflect any reversible error.

Appellant, in due time and in proper form, objected to the court's charge upon several grounds: First, because the court failed to instruct the jury on the right of the defendant to extricate herself from an illegal restraint or false imprisonment; second, because the court failed to instruct the jury on the law relative to the theory of accidental shooting; and third, because the court, in his charge on self-defense, limited and restricted her right of self-defense to an attack causing fear of death or serious bodily injury when she was entitled to a charge on a milder or lesser attack under Article 1224, P. C.

We are of the opinion that appellant's testimony was sufficient to raise the issue of an illegal restraint on the part of the deceased which entitled her to an appropriate instruction from the court upon the law of her legal right to resort to such means as appeared to her at the time to be reasonably necessary to extricate herself from such restraint, if any, taking into consideration the age, size and relative strength of the parties. We are of the opinion that the learned trial court committed error in declining to respect appellant's objection to the omission of such an instruction in his charge. We think that a charge on this subject will obviate the necessity of a charge under Article 1224, P. C.

We are also of the opinion that appellant was entitled to an instruction on the accidental discharge of the pistol. If she was restrained of her liberty by the deceased and drew the pistol, not with the intention to kill him but to induce him to release her and in the scuffle which ensued over the pistol it was accidentally discharged, she would not be guilty of murder.

254

From the case of Brickell v. State, 134 S. W. (2d) 262, we take the following quotation:

"It is a well settled rule in this state that a defendant is entitled to an affirmative instruction upon every issue raised by the evidence, whether such evidence was produced by the state or the defense and whether it be strong or feeble, unimpeached or contradicted. See Kibbe v. State, 133 Tex. Cr. R. 494, 112 S. W. (2d) 733, and authorities there cited."

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.