**James EMANUS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 50063.**

Court of Criminal Appeals of Texas.

July 9, 1975.

Bill Davis, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appellant was convicted by a jury of murder with malice under Arts. 1256 and 1257, Vernon's Ann.P.C. The jury assessed his punishment at fifty years' imprisonment.

In his first ground of error, appellant complains of the trial court's refusal to allow him to perfect a bill of exception relative to the *voir dire* examination of one of the prospective jurors. He contends that such a ruling by the trial court prohibited him from showing the harm, if any, he suffered by not being allowed to ask certain questions of the prospective juror.

The complaint thus alleges an unreasonable restriction of the appellant's *voir dire* examination. We are of the opinion that error, if any, would be apparent from the transcription of the *voir dire* proceedings. In moving to the harmfulness of any alleged error, we deem it unnecessary to consider whether the trial court actually committed error in restricting the *voir dire* examination.

There are two tests for harmless error in connection with *voir dire* proceedings. The test for ascertaining the harmfulness of an error in denying a proper challenge for cause is to look to the exercise of a defendant's peremptory challenges. If there is no showing that he was forced to accept an objectionable juror because he had exhausted his peremptory challenges, an error in denying a challenge for cause is harmless. *Ward v. State*, 505 S.W.2d 832 (Tex.Cr.App.1974). An error in the unreasonable restriction of a defendant's *voir dire* examination of the prospective jurors is quite another matter. Such examination is for the purpose of enabling counsel intelligently to exercise his peremptory challenges and a requirement that he exercise all his peremptory challenges would ordinarily make no sense. *Burkette v. State*, 516 S.W.2d 147 (Tex.Cr.App.1974); *Mathis v. State*, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959). The test for ascertaining harm in such cases is whether the trial judge's limitation of the *voir dire* examination amounted to an abuse of discretion, thus depriving appellant of a valuable right. *Burkette v. State, supra*; *Grizzell v. State*, 164 Tex. Cr.R. 362, 298 S.W.2d 816 (Tex.Cr.App.1957) (opinion on motion for rehearing); *Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974); *Barrett v. State*, 516 S.W.2d 181 (Tex.Cr. App.1974) (dissenting opinion). Our research has revealed no cases resulting in reversal where the limitation of the *voir dire* examination complained of pertained to only one juror. In the cases we have found which were reversed for this reason, the trial court has refused the asking of certain questions or otherwise acted with reference to the jury panel as a whole. Thus, counsel's inability intelligently to exercise his peremptory challenges stretched to the entire panel of veniremen. The case at bar presents a situation in which counsel's *voir dire* examination was limited as to one prospective juror only. The fact, conceded during oral argument, that appellant did not exercise all his peremptory challenges, *is* relevant in this situation and mitigates the harmfulness of any error.

Appellant's reliance on *Morris v. State*, 411 S.W.2d 730 (Tex.Cr.App.1967), *Vines v. State*, 479 S.W.2d 322 (Tex.Cr.App. 1972), and *Jones v. State*, 496 S.W.2d 566 (Tex.Cr.App.1973) is misplaced. Those cases related to the requirement of Art. 40.09, Sec. 4, Vernon's Ann.C.C.P. that *voir dire* proceedings be recorded upon request. And they held that reversal would be required if error in the *voir dire* proceedings was merely alleged, if a proper request that the proceedings be recorded had been de-

nied.[1] The rationale of *Morris* and its progeny required reversal where an appellant was prevented by the violation of a mandatory statute from showing the harm he had suffered during *voir dire*. In the instant case, however, the harm, if any, is discernible from the face of the *voir dire* statement of facts, regardless of the way in which the prospective juror would have answered the excluded questions. We are not compelled to reverse because of the mere allegation of harm, as the appellant is suggesting that *Morris et al.*, would require us to do.[2] We are capable of ascertaining the harmfulness of the trial court's rulings on the *voir dire* questions propounded by appellant's counsel by referring to the record. And we concude that error, if any, was harmless.

Appellant's first ground of error is overruled.

In connection with appellant's remaining grounds of error, it becomes necessary to summarize the testimony surrounding the facts of the offense in question. William M. Higgins testified for the State that he was walking east on Main Street in Lubbock on February 9, 1973, the date of the offense. He stated that appellant passed him walking at a normal pace going in the opposite direction and that the deceased, Larry Jack Stevens, a plainclothes Lubbock police officer, also passed him walking slightly faster after the appellant. Higgins testified he heard someone say "Turn me loose" or "Go away" or words to that effect and he looked over his shoulder to see what was happening. He saw appellant knock the deceased to his knees and then take out a pistol and fire three quick shots at him. As Higgins ran for cover, he testified, more shots were fired and both men fell to the sidewalk wounded. Stevens was pronounced dead soon thereafter. When asked what had happened by an investigating of-

ficer, appellant replied, "It's simple. I shot him and he shot me." Two other witnesses testified that they heard one shot and then a volley of shots, but they stated that it appeared to them that appellant fired the first shot. No other witness was able to relate any conversation between appellant and the deceased.

■ Appellant's second and third grounds ascribe error to the trial court for his failure to charge the jury on the issues of murder without malice and self-defense. Appellant claims that these issues were raised by the evidence, entitling him to charges thereon.

Article 1257c of Vernon's Ann.Penal Code provided as follows:

"In all cases tried under the provisions of this Act it shall be the duty of the Court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, and in appropriate terms in the charge to apply the law to the facts as developed from the evidence."

The appellant did not testify. We are asked to find adequate cause for a sudden passion to arise in a man of ordinary temper on the basis of the other witness' testimony. There was some testimony suggesting that the deceased may have attempted to detain appellant and there is evidence that someone, presumably the appellant, said "Turn me loose," or words to that

---

1. Two members of the unanimous court in *Vines*, which followed *Morris*, have since changed their positions, casting doubt on the continued validity of the *Morris* line of cases. See dissenting opinions on original submission and on appellant's motion for rehearing in *Jones v. State, supra*.

2. Nor is reversal required because of the violation, *per se*, of any mandatory statute as the dissenters would hold in Art. 40.09, Sec. 4, cases. *Jones v. State, supra*.

effect. Witness Higgins did not say that these words were shouted, screamed, or spoken with any degree of intensity of feeling. This is not evidence of such anger, rage, resentment, or terror as to render anyone incapable of cool reflection, whatever the cause. There is no suggestion that the deceased brandished a weapon or attacked appellant as in *Monroe v. State*, 501 S.W.2d 639 (Tex.Cr.App.1973) or *Armentrout v. State*, 515 S.W.2d 297 (Tex.Cr.App., Delivered Nov. 13, 1974). There is no evidence of animosity or earlier violence between the two as there was in *Mays v. State*, 513 S.W.2d 846 (Tex.Cr.App.1974), or *Provost v. State*, 514 S.W.2d 269 (Tex.Cr.App.1974). The only evidence of a scuffle is that the appellant shoved the deceased to his knees before he opened fire. There was nothing to indicate that appellant was frightened as in *Ray v. State*, 515 S.W.2d 664 (Tex.Cr. App.1974). This ground of error is overruled.

Appellant's claim to a charge on self-defense is based on Art. 1223, V.A.P.C., which provided as follows:

"When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapon or means used by the party attempting such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury."

The prerequisites to the application of this presumption were most recently stated in *Stone v. State*, 510 S.W.2d 612 (Tex.Cr.App. 1974), where the Court said:

"It has been the consistent holding of this Court that before the presumption of said Article comes into play there must be a showing (1) that the deceased had a weapon, (2) that such weapon in the manner of its use was calculated to cause death, and (3) that the deceased was using the weapon to make an assault upon the appellant at the time the appellant fired the fatal shot."

Admittedly, the first two requirements stated above are satisfied under the evidence in this record. Obviously, the deceased had a gun and obviously it was used in a manner calculated to cause death. The question is whether there is evidence to show that the deceased used the weapon in an assaultive manner *before* he was shot by appellant. *Stone v. State, supra*; *Johnson v. State*, 501 S.W.2d 915 (Tex.Cr.App.1973).

The evidence suggested that the deceased approached the appellant with his police badge in his hand—nothing more. Those witnesses who testified to seeing a gun saw a gun only in the appellant's possession. No one saw a weapon in the deceased's hands. Witness Higgins was sure appellant fired the first three shots. Two other witnesses who thought the flurry of shots was preceded by a single shot testified that the single shot either came from appellant or came from his direction. In his brief, appellant strenuously urges that the evidence suggests that the deceased may have fired the first shot, but such contention is not borne out by the record. The possibility that the deceased fired first is very remote under these facts.

■ In fact, such a possibility would have to be based completely on conjecture. There was no evidence indicating the deceased fired first. An inference cannot be based upon an inference. 23 Tex.Jur.2d, Evidence, Sec. 69, and cases cited therein. Without evidence at least raising the question, appellant was not entitled to the benefits of the presumption of Art. 1223.

■ Finally, appellant complains of the court's failure to charge on appellant's right to resist an unlawful arrest and his right to resist an illegal restraint. He places his primary reliance on *Matterson v. State*, 142 Tex.Cr.R. 250, 152 S.W.2d 352 (1941) for the proposition that a defendant is entitled to such a charge when the issue of detention (or arrest) is raised by the evidence. In *Matterson*, however, the defendant testified in detail about the deceased's grasp on her wrist and his threats to choke her. Defend-

ant's testimony alone is sufficient to raise such issues, as it clearly did in *Matterson*. *Barnes v. State*, 172 Tex.Cr.R. 303, 356 S.W.2d 679 (1962) (opinion on State's motion for rehearing), also relied upon by appellant, is likewise distinguishable. There was ample evidence in that case to show that the deceased, a night watchman for the City of San Augustine, interrogated and attacked defendant apparently without probable cause to do so. The Court said that these facts raised the issue of resisting an unlawful arrest. In *Sullivan v. State*, 365 S.W.2d 810 (Tex.Cr.App.1963), the defendant testified that the deceased was holding her by the wrist, that he struck her, and that she was in fear. Nevertheless, her omission to assert that the fatal stabbing was for the purpose of freeing herself from the illegal restraint defeated her claim to a charge on such issue. In the case at bar, there is a similar lack of evidence on the appellant's need to free himself from an illegal restraint. In fact, there is also an absence of evidence of any restraint or arrest at all. None of the evidence as to the shoving, the brandishing of weapons, and the initial shooting supports appellant's claim that he was being unlawfully detained.

Appellant's grounds of error are overruled and the judgment is affirmed.