**Bruce Lonnie ANSON, Appellant,**

v.

**The STATE of Texas.**

No. 741–96.

Court of Criminal Appeals of Texas, En Banc.

Oct. 8, 1997.

Brian W. Wice, Houston, for appellant.

Carol M. Cameron, Assistant District Attorney, Houston, Matthew Paul, State's Atty., Austin, for State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

KELLER, Judge.

Appellant was convicted of aggravated sexual assault of a child and sentenced to eight years confinement. The Court of Appeals affirmed the conviction. *Anson v. State,* No. 14–92–00731–CR, 1995 WL 353455 (Tex. App.—Houston [14th Dist.], delivered June 8, 1995)(unpublished). Appellant contends that the Court of Appeals erred in holding that the trial court did not err in preventing appellant from individually questioning three

prospective jurors at the bench. We will affirm.

## 1. Facts

The record reflects that, after the venire was informed that the case would involve allegations of aggravated sexual assault of a child, one prospective juror offered that she "had a similar situation in the family" which might tend to prejudice her against appellant. Defense counsel informed the venire that he would provide them with an opportunity to speak privately at the bench about similar personal experiences that could potentially preclude them from participation. At the end of defense counsel's voir dire, fifteen panelists responded affirmatively when asked whether there was anything of a personal nature that they wanted to discuss at the bench. The record reflects that, during the trial judge's private questioning of these panelists, defense counsel was prohibited from individually questioning three of them further on the issues discussed.[1] Subsequently, defense counsel used peremptory strikes to exclude them. He did not request additional peremptory challenges.

Relying upon *Ratliff v. State*, 690 S.W.2d 597, 599–600 (Tex.Crim.App.1985), the Court of Appeals determined that the trial court's action did not constitute reversible error because none of the three prospective jurors complained of served on the jury. The Court of Appeals also determined that further questioning by defense counsel would have been repetitious in light of the trial judge's questioning and the prospective jurors' responses.

1. The trial judge permitted appellant to ask additional questions of some of these prospective jurors during this time.

2. This harm analysis has also been characterized as a preservation of error analysis. *See Green v. State*, 934 S.W.2d 92, 105 (Tex.Crim.App.1996). We note that the harm analysis is somewhat different when additional peremptory strikes are granted but multiple challenges for cause are involved. *See Mason v. State*, 905 S.W.2d 570, 578 (Tex.Crim.App.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 717, 133 L.Ed.2d 670 (1996).

## 2. Analysis

Appellant contends that the trial judge erred in prohibiting questioning and that the Court of Appeals erred in relying upon *Ratliff* because *Ratliff* involved time limits rather than subject matter limitations on questioning. Assuming arguendo that the trial court erroneously prohibited appellant from asking proper questions of certain individual prospective jurors, appellant's claim must nevertheless fail. We have recently recognized that the harm analysis we have traditionally applied to the erroneous denial of a defendant's challenge for cause also applies to the erroneous prohibition of proper questioning of individual prospective jurors. *Janecka v. State*, 937 S.W.2d 456, 470–471 & 471 n. 9 (Tex.Crim.App.1996). For the erroneous denial of challenges for cause, a defendant is harmed only if (1) he exhausts all of his peremptory challenges, (2) he requests more challenges, (3) his request is denied, and (4) he identifies an objectionable person seated on the jury on whom he would have exercised a peremptory challenge. *Narvaiz v. State*, 840 S.W.2d 415, 427 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).[2] The record in the present case shows that appellant used all of his peremptory challenges, including striking all the individual prospective jurors of which he complains, but made no request for additional challenges. Hence, under *Janecka*, appellant has suffered no harm from the trial court's refusal to permit questioning of the individual prospective jurors involved. While *Janecka* is a capital prosecution, and the present case is a noncapital one, we see no reason to distinguish between the two on the present issue. As in *Janecka*, any error in the present case is limited to particular individual prospective jurors.[3]

3. In his concurring opinion, Judge Meyers contends that *Janecka*'s harm analysis ignores the harmless error standards contained in the Texas Rules of Appellate Procedure. We disagree. It is true *Janecka* does not mention Rule 81(b)(2), and our cases have often phrased the standard as requiring an appellant to show harm. Nevertheless, we find that the standard applied in *Janecka* is simply a specific application of former Rule 81(b)(2) to a recurring fact situation found in voir dire. If an appellant doesn't meet the *Janecka* requirements, then the error is harmless beyond a reasonable doubt.

The judgment of the Court of Appeals is affirmed.

MEYERS and MANSFIELD, JJ., concur with opinion.

BAIRD, J., dissents in which OVERSTREET, J., joins.

OVERSTREET, J., dissents in which BAIRD and PRICE, JJ., join.

MEYERS, Judge, concurring.

The majority should directly address the substantive question of whether appellant's voir dire was wrongfully limited, which is a large part of the ground upon which we granted review. Further, while I do not disagree that the majority's harm analysis is a logical extension of existing precedent, I write separately to question why this analysis appears to bypass entirely the harmless error rule provided for in the rules of appellate procedure? Rule 81(b)(2) was ignored when it came to assessing error in jury selection, so perhaps Rule 44.2 [1] will be ignored as well. The Court should say so.

## I.

At trial several veniremembers were questioned individually at the bench. The trial court refused to allow appellant to ask two of these venirepersons an additional question.[2] On appeal, appellant claimed the trial court's restriction of his voir dire was an abuse of discretion since the questions he sought to ask were proper and he was forced to blindly use peremptory strikes on the two venirepersons. The Court of Appeals applied a three-factor test established by this Court in *Ratliff v. State*, 690 S.W.2d 597 (Tex.Crim.App. 1985), to determine when a trial court abuses its discretion in limiting voir dire. The Court of Appeals concluded under this test that since none of these venirepersons served

on the jury, there was no abuse of discretion. The Court of Appeals also said there was no abuse of discretion because appellant was merely attempting to ask questions the trial court had already asked. The majority "assumes arguendo" the trial court abused its discretion in limiting appellant's voir dire. The majority ought to squarely address this issue. In my view, the trial court abused its discretion in restricting appellant's voir dire and the Court of Appeals erred to the extent it held otherwise.

During the general voir dire in this aggravated sexual assault of a child case, one venireperson indicated that she had a "similar situation" in her family background that might prejudice her against appellant. Appellant informed the venire that they would be provided an opportunity to discuss such matters privately at the bench. Following the general voir dire, thirteen veniremembers approached the bench for private discussions with the trial court and the parties. During discussions with two of these venirepersons, appellant was not allowed to ask questions:

> THE COURT: Mr. Pulis ... You had some difficulty that you wanted to talk to the Court about. What was that?
>
> VENIREMEMBER PULIS: Yes, sir. I wouldn't call it sexually abused but I was molested when I was 12 years old and I'm afraid that might weigh on my decision.
>
> THE COURT: Well, the test simply is can you sit in the jury box, listen to the testimony and render a verdict on what's submitted by the witnesses on the stand. You're dealing with another case with another thing. Can you step in that jury box and listen to that testimony and give a verdict that you think is proper?
>
> VENIREMEMBER PULIS: I would try. That's all I can guarantee you.

1. Effective September 1, 1997, newly enacted Rule 44.2, Reversible Error in Criminal Cases, replaced former Rule 81(b)(2), providing:

   (a) Constitutional error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the

   error did not contribute to the conviction or punishment.
   (b) Other errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

2. Appellant also complains his voir dire was restricted as to a third venireperson, but he failed to specify for the record exactly what question he would have asked that person.

THE COURT: You're willing to do that?

VENIREMEMBER PULIS: I would be willing.

APPELLANT: May I question this witness?

THE COURT: No. That's enough. Go have a seat.

APPELLANT: For the purpose of the record I need to object of not being allowed to—I would have tendered this question. My question to that juror would have been could he be a fair and impartial juror with regard to the given circumstances of his background.

\* \* \*

THE COURT: Come right up [Mrs. Wei]. We're talking about a juror. Can you step in the jury box and listen to the testimony and apply the laws of the situation, render a verdict one way or the other? Can you do that?

VENIREMEMBER WEI: No, I'm trying to say this because my family is very strick [sic]. I have a very strong feeling.

THE COURT: Your father is very strick [sic]?

VENIREMEMBER WEI: We are a very strick [sic] family and when I listen to this I think it would be very difficult for me, I'm afraid.

THE COURT: What does that do to you? I'm not quite understanding. You can go by the evidence in this case, can't you; sworn testimony?

VENIREMEMBER WEI: Yes.

THE COURT: And you could render a verdict?

VENIREMEMBER WEI: Yes. [B]ut I'm afraid I might already be set in my mind, that's what I'm afraid of.

THE COURT: All right. Have a seat, please.

APPELLANT: Your honor, I would like to question that last witness.

THE COURT: Make your objections.

APPELLANT: I object. I would like to have questioned that witness with regard to giving her predisposition at this time, could she be a fair and equitable juror given the facts and circumstances and could she serve given her predisposition at this time. . . .

A venireperson is challengeable for cause by either party if "he has a bias or prejudice in favor of or against the defendant." Tex. Code Crim. Proc. Ann. art. 35.16(a)(9). When a venireperson states that his personal experiences, knowledge or opinions might bias or prejudice him against a party, "[t]he sole question is whether [he] can put aside prior knowledge and opinion and render an impartial verdict." [3] *Penry v. State*, 903 S.W.2d 715, 728 (Tex.Crim.App.1995). If the venireperson states that he cannot set aside his personal knowledge, opinions or experiences and be fair and impartial, he is challengeable for cause. *See Burks v. State*, 876 S.W.2d 877, 896 (1994)(quoting *Smith v. State*, 641 S.W.2d 248 (Tex.Crim.App.1982)). The questions sought were proper and the trial court abused its discretion in disallowing them. Once individual questioning was permitted and revealed the possibility of a bias or prejudice against appellant, appellant should have been allowed to ask the venirepersons whether they would be able to lay their personal experiences aside and be fair and impartial. The Court of Appeals wrongly concluded the questions appellant sought to ask were duplicative of the trial court's questions. A reading of the above two exchanges reflects that the trial court

3. A distinction has been made between a true bias or prejudice against one of the parties and an opinion that can be set aside. As was recently reiterated in *Smith v. State*, 907 S.W.2d 522, 530 (Tex.Crim.App.1995)(citing *Williams v. State*, 565 S.W.2d 63 (Tex.Crim.App.1978)), "While a trial court may hold a juror qualified who states that he can lay aside an opinion he has formed, no such discretion vests in the court with reference to a juror with a bias or prejudice against the parties." *See also Kemp v. State*, 846 S.W.2d 289, 299 (Tex.Crim.App.1992)(discussing "funda-mental distinction" between prejudice against a party and merely entertaining an opinion).

A distinction is also made between a bias or prejudice against a party and a bias or prejudice against the law upon which the parties are entitled to rely. When a venireperson is biased or prejudiced against the law, the test is whether their views would prevent or substantially impair their ability to abide by their oath and follow the law. *Smith*, 907 S.W.2d at 527; *Riley v. State*, 889 S.W.2d 290 (Tex.Crim.App.1993)(opinion on original submission and opinion on reh'g).

did not ask the venirepersons whether they could be fair and impartial despite their personal experiences. Without this information, appellant could not intelligently exercise a peremptory challenge against these venirepersons.

## II.

Any such error, the majority concludes, was harmless. In arriving at this conclusion, the majority applies a test utilized recently in *Janecka v. State*, 937 S.W.2d 456 (Tex.Crim. App.1996), to assess harm arising from the prohibition of proper questioning of individual venirepersons during voir dire in a capital murder case:

> [I]n order to establish that he is harmed by the denial of intelligent use of a peremptory challenge as to a single veniremember, a defendant must, in effect, blindly exercise a peremptory against the veniremember to prevent him from sitting on the jury. *Only if this prophylactic use of the peremptory challenge subsequently results in the deprivation of a peremptory challenge he would have used later on can we say the error in denying him the intelligent use of the peremptory challenge was harmful.*

*Janecka*, 937 S.W.2d at 471 (emphasis added). The Court emphasized the distinction between refusing a proper question propounded to the entire venire and the refusal of a proper question as to individual venirepersons. In *Nunfio v. State*, 808 S.W.2d 482, 485 (Tex.Crim.App.1991), a case where a proper question was sought for query to the entire venire, we specifically held "error in the denial of a proper question which prevents the intelligent exercise of one's peremptory challenges constitutes an abuse of discretion and is not subject to a harm analysis under Rule 81(b)(2)." The Court in *Janecka* emphasized that the rule in *Nunfio*, that the error is not subject to a harm analysis under Rule 81(b)(2), only makes sense where the proper question was propounded to the entire venire. *Janecka*, 937 S.W.2d at 471 n. 9. The implication, therefore, is that where the question is asked as to a single venireperson, then harm *can* be assessed under Rule 81(b)(2). But nowhere in the

Court's analysis in *Janecka* or indeed in the instant case, is there any reference to Rule 81(b)(2) or its recent successor Rule 44.2.

This is not all that surprising. The Court has long disregarded the existence of the harmless error rule as provided for in the Rules of Appellate Procedure in the jury selection context, in favor of applying a variety of other tests to ascertain the existence of "harm." Perhaps Rule 81(b)(2) has been avoided because no voir dire error that ultimately affects the make-up of the jury could be found harmless thereunder. As I have previously opined, the impact of error affecting the exercise of peremptory strikes cannot be proven beyond a reasonable doubt to have made no contribution to the conviction or the punishment:

> ... We cannot know with any certainty, let alone beyond reasonable doubt, whether appellant would have been convicted had [the wrongfully excluded venireperson] served on his jury. We cannot know whether the State would have used a peremptory strike against [that venireperson] had its challenge for cause been overruled, nor who would have served in [the excluded venireperson's] place had the State used a peremptory challenge against him. If we follow the admonishment of Rule 81(b)(2), none of us can fairly say that the record affirmatively discloses a lack of harm beyond reasonable doubt.

\* \* \*

> ... however much we may suspect that errors such as the one committed in this case did not affect the outcome of trial, however much we may suspect that the jurors who tried appellant were entirely fair in their deliberations, we are not at liberty under the law to ratify the judgment of conviction in this case, nor will we be in subsequent cases where the same error occurs. If it seems to some that this is too harsh a rule, the only solution is to amend or repeal article 35.16.

*Zinger v. State*, 932 S.W.2d 511, 515–16 (Tex.Crim.App.1996)(Meyers, J., concurring); *see also* GEORGE E. DIX & ROBERT O. DAWSON, 42 CRIMINAL PRACTICE AND PROCEDURE § 35.33 (1995)(to render denial of proper question of

individual venireperson harmless by granting of additional strike ignores fact that his answer might have caused counsel not to strike him as easily as it could to strike him). To my knowledge, however, a majority of the Court has never expressed this sentiment. *Cf. compare Ransom v. State*, 920 S.W.2d 288, 294 n. 5 (Tex.Crim.App.1994)(opinion on original submission)(holding that State's erroneously granted challenge for cause was not "error affecting punishment only" under article 44.29(c) because "the erroneous elimination of a venireperson conceivably affects the composition of the jury, which sits at both guilt and punishment) *with id.* at 298 (opinion on rehearing)(holding that under article 44.29(c) "voir dire error regarding a subject that a jury would consider only during the punishment phase of trial is 'error affecting punishment only' unless the defendant produces evidence showing that the error necessarily produced a jury biased against the defendant on the issue of guilt"). Rather, the Court has consistently placed a burden on the defendant to show that as a result of error during jury selection, he did all that he could to right the error (by exercising a peremptory if necessary and requesting more if needed) and nevertheless wound up with a juror that he found objectionable. What I still don't understand is how this analysis jibes with former Rule 81(b)(2) or with the newly enacted harmless error rule, 44.2.

At any rate, it appears to have been the law for a very long time that harm is assessed in the jury selection process by considering the subsequent utilization of peremptory strikes and whether the defendant ultimately was forced to have an objectiona-

ble juror sit.[4] This is well-established *stare decisis* and no one seems to be urging its overruling. But I nevertheless view it as odd, and with the promulgation of the Court's revised Rules of Appellate Procedure, this might be a good time to re-evaluate our practice of ignoring application of those rules to error occurring in the jury selection process.

With these comments, I concur.

MANSFIELD, Judge, concurring.

Because I believe that our holding in *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim. App.1991) should apply only to the denial of the right to ask proper questions of the venire during general voir dire, I join the opinion of the court.

In *Nunfio*, the defendant sought to ask the venire whether it would be biased in favor of the victim, a nun. He was denied the opportunity to ask the venire this question (which was clearly proper) and we found appellant properly preserved the issue for review on appeal. In reversing his conviction and remanding the cause to the trial court, we held: "[E]rror in the denial of a proper question which prevents the intelligent exercise of one's peremptory challenges constitutes an abuse of discretion and is not subject to a harm analysis under Rule 81(b)(2)."

The logic behind our holding in *Nunfio* is plainly evident: how can a defendant intelligently exercise his peremptory challenges if he is denied the right to ask proper questions of the venire? With the entire venire being affected by this denial, the defendant is prevented from identifying which venirepersons

---

4. While the basis for this reasoning has never been explained, perhaps it is because a defendant is not entitled under the constitution or any statute to have any particular venireperson sit on his jury (absent discrimination). *See Rousseau v. State*, 855 S.W.2d 666, 676 (Tex.Crim.App.1993)(parties do not have right to selection of any particular juror only right to exclude particular juror in absence of discrimination). Rather, a defendant only has a right to exclude particular venirepersons. *Id.* Further, exclusion of a particular qualified juror does not affect the fair and impartial make-up of the jury. In the context of the potentially wrongful exclusion of a qualified venireperson on account of race, the Court has explained:

... The possibility of racial prejudice in the selection of the petit jury affects the adversarial presentation of the case not at all. If anything, it affects only the makeup of the tribunal that hears and adjudges that presentation.... In any event, if race is not an allowable "proxy" for bias [citation omitted] we can only conclude that an all white jury—whether it is the product of chance or of racial discrimination in the exercise of peremptory challenges—can nevertheless render a fair and impartial verdict in the trial of a minority defendant. *Batiste v. State*, 888 S.W.2d 9, 15 (Tex.Crim.App. 1994).

against whom he would best exercise his limited peremptory strikes as he is unable to take into account the answers to the question that he was erroneously denied the right to ask. In effect, the denial "contaminates" the entire venire. Furthermore there is no way a reviewing court could assess a claim of denial of the right to ask proper questions since the appellant would be unable to point to which venirepersons, who actually served on the jury, he would have struck had he been allowed by the trial court to ask the proper question or questions.[1] Accordingly, a harm analysis under Rule 81(b)(2) is not possible where a defendant is denied the right to ask a proper question during general voir dire.

The situation in the present case, however, is similar to that presented by individual voir dire in capital cases. As correctly stated in Judge Keller's well-written opinion, denial of a defendant's right to ask a proper question of an individual venireperson should be reviewed on appeal using the standard applicable to the erroneous denial of a defendant's challenge for cause under Article 35.16. Under this standard, a defendant is harmed by the erroneous denial of a challenge for cause only if (1) he exhausts all of his peremptory strikes; (2) he requests more peremptory strikes; (3) his requests for more peremptory strikes are denied; and (4) he identifies an objectionable person who actually served on the jury against whom he would have exercised a peremptory strike had he had one available. *Narvaiz v. State,* 840 S.W.2d 415, 427 (Tex.Crim.App.1992); *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). *See also, Janecka v. State,* 937 S.W.2d 456, 470 (Tex.Crim.App.1996); *Gardner v. State,* 733 S.W.2d 195, 212 (Tex.Crim. App.1987), *cert. denied,* 488 U.S. 1034, 109 S.Ct., 848, 102 L.Ed.2d 979 (1989); *Emanus v. State,* 526 S.W.2d 806, 808 (Tex.Crim.App. 1975).

The underpinning of our holdings in the cases cited above is that where a challenge for cause is erroneously denied with respect to *one venireperson,* the error is isolated *to that one venireperson.* The harmfulness of the error, since it does not contaminate the general venire, can be readily determined using the analysis established by this Court in *Emanus* and its progeny.

Conceptually, the error in the present case is very much like the erroneous denial of a defendant's challenge for cause to an individual venireperson in a capital case: it only affected the three venirepersons (Pulis, Wei and Shaffner) appellant wanted to question before the bench and out of the hearing range of the venire. Therefore, the same analysis set forth in *Emanus, Janecka,* and *Narvaiz* is readily applicable here. I note appellant did use all his peremptory strikes and struck the three venirepersons to whom he was denied the right to ask a proper question.[2] Appellant did not ask for any additional peremptory strikes, nor did he identify any persons who actually served on the jury against whom he would have exercised a peremptory strike had he had one available. Appellant did not, at any point, ask for additional peremptory strikes. Accordingly, appellant fails to demonstrate any harm resulted from the denial of his right to ask a proper question of the three venirepersons.

In my opinion, one standard should be applicable to determine whether reversible error results from the denial of the right to ask a proper question (or questions) of an *individual* venireperson in both capital and noncapital cases: the standard set forth and followed by this Court in *Emanus, Narvaiz, Janecka* and numerous other cases to determine if the erroneous denial of a challenge for cause is reversible error. Our holding in *Nunfio,* applicable where the denial of the right to ask a proper question of the general venire (holding that such denial is, in effect, automatic reversible error), is, accordingly,

---

1. It appears to me that denial of the right to ask proper questions of the venire would in some instances also impermissibly infringe on a defendant's right to make challenges for cause under Texas Code of Criminal Procedure Article 35.16.

2. The question concerned their ability to be "fair and impartial," given their personal backgrounds, to appellant, charged with aggravated sexual assault of a child.

not applicable to the present case.[3]

With these comments, I join the opinion of the Court.

BAIRD, Judge, dissenting.

The majority opinion reflects either a purposeful distortion of our precedent or a fundamental misunderstanding of our precedent. Because neither is acceptable, I dissent.

## I. Purposeful Distortion

The majority relies on *Janecka v. State*, 937 S.W.2d 456, 470–71 (Tex.Cr.App.1996), and *Narvaiz v. State*, 840 S.W.2d 415, 427 (Tex.Cr.App.1996), to state: "We have recently recognized that the harm analysis we have traditionally applied to the erroneous denial of a defendant's challenge for cause also applies to the erroneous prohibition of proper questioning of individual prospective jurors." This statement is patently false.

Neither of the cited cases support the majority's holding. *Janecka* holds the denial of a proper question to an individual veniremember is harmless unless appellant exhausted his peremptory strikes. *Id.*, 937 S.W.2d at 470–471. In the instant case, appellant exhausted his peremptory strikes. TR. Vol. I, pg. 239. Therefore, *Janecka* has no application to the case at bar. And, in *Narvaiz* the issue was whether the alleged error in denying the defendant's challenge for *cause* was preserved for appellate review. That is not the case here. Appellant did *not* challenge any of the three complained of veniremembers for cause. Therefore, *Narvaiz* has no application to the instant case.

To hold this case is controlled by *Janecka* and *Narvaiz* is sheer sophistry.

## II. The Fundamental Misunderstanding Of Law

The majority evinces a fundamental misunderstanding of law by misapplying a preservation of error analysis as a harm analysis.

In the instant case, the trial judge erred in failing to permit appellant to question three veniremembers. To preserve the issue for appellate review, the defendant must demonstrate only that he sought to ask a proper question which the trial judge denied. *Cockrum v. State*, 758 S.W.2d 577, 584 (Tex.Cr.App.1988); *Caldwell v. State*, 818 S.W.2d 790, 794 (Tex.Cr.App.1991); *Allridge v. State*, 762 S.W.2d 146, 163 (Tex.Cr.App.1988); *Gardner v. State*, 730 S.W.2d 675, 689 (Tex.Cr.App.1987); *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Cr.App.1991); *and, Smith v. State*, 703 S.W.2d 641, 643 (Tex.Cr.App.1985).

If the appellate court determines the trial judge denied a proper question, the error is reversible. *Nunfio*, 808 S.W.2d at 484; *Smith v. State*, 513 S.W.2d 823, 826 (Tex.Cr.App.1974); *Maddux v. State*, 862 S.W.2d 590, 591 (Tex.Cr.App.1993); *Woolridge v. State*, 827 S.W.2d 900, 906, 907 (Tex.Cr.App.1992); *Allridge*, 762 S.W.2d at 163; *Cockrum*, 758 S.W.2d at 584; *Smith*, 703 S.W.2d at 643; *Powell v. State*, 631 S.W.2d 169, 170 (Tex.Cr.App.1982); *and, Mathis v. State*, 576 S.W.2d 835, 837 (Tex.Cr.App.1979). This is so because, by prohibiting a proper question, appellant was denied his right to intelligently exercise his peremptory challenges. *Linnell v. State*, 935 S.W.2d 426, 430 (Tex.Cr.App. 1996); *and, 42 G. Dix & R. Dawson, TEXAS PRACTICE: Criminal Practice and Procedure § 35.33 (1995).[1]

3. I believe the issue presented in this case is the denial of the right to ask a proper question of venirepersons and not one involving the discretion of a trial court in limiting voir dire. Accordingly, I have not addressed the applicability of *Ratliff v. State*, 690 S.W.2d 597 (Tex.Crim.App. 1985). Assuming, arguendo, *Ratliff* is applicable, Judge Keller correctly notes in her opinion appellant could not prevail as he fails to identify any objectionable venirepersons that actually served on the jury, nor did he ask for additional peremptory strikes.

1. While it is important for the parties to identify veniremembers who hold views *unfavorable* to

their case, it is equally important for the parties to determine which veniremembers hold *favorable* views. And, without the veniremember's answer to a proper question, it is impossible for the parties to know the veniremember's views. Because the parties are permitted to know those views, they are denied the necessary information to intelligently decide whether to peremptorily strike or *not* strike a veniremember when proper questioning is not allowed.

I am quite confused by Judge Meyers concurring opinion wherein he chose to write separately "to question why [the majority's] analysis appears to bypass entirely the harmless error rule provided for in the rules of appellate proce-

The majority believes the instant error would have been cured had appellant asked for and received three additional peremptory strikes. However, similar positions have been raised and summarily rejected.

The suggestion has been made that perhaps denial of a proper question *to a particular venireman* might be rendered harmless by the granting of an additional strike. However, this ignores the fact that the particular venireman's answer to the precluded question might have caused counsel *not* to strike him as easily as it could *to* strike him. We do not know what the answer to the question would have been. If the particular venireman is struck, we have no way of knowing whether the granting of an extra strike cures anything. It certainly does not return the struck venireman to the jury panel.

42 G. Dix & R. Dawson, TEXAS PRACTICE: Criminal Practice and Procedure § 35.33 (1995) (emphasis in original) (internal quotations and citations omitted).

### III. Conclusion

The majority has either purposefully distorted our precedent or relied upon a fundamental misunderstanding of settled law. Accordingly, I dissent.[2]

OVERSTREET, J., joins this opinion.

OVERSTREET, Judge, dissenting.

Appellant was charged by indictment with the felony offense of aggravated sexual assault pursuant to V.T.C.A. Penal Code, § 22.021, alleged to have occurred on or about July 1, 1990. Before a visiting judge

in a trial by jury, appellant was found guilty as charged in the indictment. On June 9, 1992, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for eight (8) years. The court of appeals affirmed. *Anson v. State*, No. 14–92–00731–CR, 1995 WL 353455 (Tex.App.—Houston [14th Dist.], delivered June 8, 1995) (unpublished).

We granted one of appellant's questions for review to determine "whether the court of appeals erred in holding that the trial court did not err in precluding appellant from individually questioning three veniremembers at the bench." The majority assumes arguendo that the trial court erroneously prohibited appellant from asking proper questions of certain individual veniremembers, but nevertheless affirms because it concludes that appellant has failed to show harm resulting from such error. *Anson v. State*, 959 S.W.2d 203 (Tex.Cr. App.1997) (majority opinion). To this conclusion, I respectfully dissent.

### I. SUMMARY OF PERTINENT FACTS

Appellant claims error, and the opinion of this court assumes arguendo that such claim is correct, in the trial court precluding him from individually questioning three particular veniremembers at the bench. He sought such questioning because during general voir dire, when the panel was informed that the case would involve allegations of aggravated sexual assault of a child, one veniremember

---

dure?" His question was answered in *Nunfio* where the Court unanimously held the error in the denial of a proper question "is not subject to a harm analysis under Rule 81(b)(2)." 808 S.W.2d at 485. Judge Meyers personally recognized this in *Zinger v. State*, 932 S.W.2d 511, 515 (Tex.Cr.App.1996)(Meyers, J., concurring.), where he stated the high degree of confidence required by Rule 81(b)(2) "can never be met in the case of jury selection error because the task is intrinsically too speculative."

**2.** The parties who appear before this Court have every right to believe their issues will be resolved in a fair and impartial manner. Making decisions in this manner is the sole source of our credibility. When a majority of this Court reaches out to resolve issues not raised by the parties,

the majority acts as partisan advocates, not as impartial jurists.

In the instant case, we granted review to determine whether the trial judge erred in precluding appellant from individually questioning three veniremembers. But, the majority does not address this ground for review. Instead, the majority holds the error was not preserved. This is not a part of the decision of the Court of Appeals nor did the State file a cross-petition urging our consideration of this issue. Therefore, rather than acting as impartial jurists, the majority acts as partisan advocates advancing an agenda of reaching results which ultimately benefit the State.

offered that she "had a similar situation in the family" which might tend to prejudice her against appellant. Appellant informed the veniremembers that they would be provided with the opportunity to speak privately at the bench about similar personal experiences and about matters which were too personal in nature to discuss comfortably in the presence of the venire panel and which could potentially preclude them from serving as a juror in this case. Ultimately, fifteen veniremembers expressed the need to speak privately with counsel at the bench. Though the trial court did some questioning of those panelists at the bench, and allowed appellant to ask some questions, it prohibited him from individually questioning three of them further on issues relating to sexual abuse. Appellant specifically objected to being precluded from asking such questions, and ultimately used peremptory strikes to exclude those three veniremembers.

## II. MAJORITY'S DISPOSITION

The majority concludes that despite the error in preventing the above-discussed questioning of the three veniremembers, appellant failed to show harm in such preclusion. It cites our recent capital murder opinion in *Janecka v. State*, 937 S.W.2d 456, 470–71 (Tex.Cr.App.1996), *cert. filed*, April 29, 1997, for the proposition that harm must be shown by: 1) exhausting all peremptory challenges, 2) denial of a request for more such challenges, and 3) identifying an objectionable juror seated on the jury on whom he would have exercised a peremptory challenge had he had one remaining. *Anson v. State*, *supra*, at 205–06. The majority appears to acknowledge that this method for showing harm has traditionally applied to "the erroneous denial of challenges for cause[.]" *Id.* As discussed above, appellant does not complain of a denial of a challenge for cause; but rather he complains of being denied the opportunity to question the three veniremembers about sexual abuse to determine their fitness for jury service in this aggravated sexual assault case. However, *Janecka*, *supra*, in the context of death penalty capital murder individual voir dire, transferred that standard of showing harm in the erroneous denial of a challenge for cause to the errone-

ous denial of proper questioning of a veniremember.

Now the majority in this case further transfers that standard to the non-capital group voir dire process of questioning veniremembers, though it does indicate that "any error in the present case is limited to particular individual prospective jurors." *Anson v. State*, at 205–06. Thus, the majority is now requiring, in a non-death penalty case where voir dire is done of the panel as a whole, a party who is erroneously prevented from properly questioning particular members of that panel to blindly exercise peremptory challenges on veniremembers and prevent them from serving on the jury in order to show harm from such erroneous denial of questioning.

## III. MY ANALYSIS

As I pointed out dissenting in *Janecka*, the problem with limiting proper voir dire questioning is that it deprives one of the opportunity to intelligently (based upon responses to legally proper questions) exercise peremptory challenges and challenges for cause during the jury selection process. *Janecka v. State*, 937 S.W.2d at 479 (Overstreet, J., dissenting). As the trial court questioned appellant's attorney about why he wanted to call veniremembers to the bench and why jurors would be talking about personal experiences in the jury room, it indicated that counsel did not know absolutely whether they had personal experiences of themselves or their children being abused; whereupon counsel insightfully stated, "I absolutely want to know if that's something that has happened in their background." Yet this Court fallaciously continues to require one to blindly exercise peremptory challenges on veniremembers who are prevented from answering such legally permissible questions and providing legally permissible information in order to enforce the right to receive answers to such proper questions. Such requires the removal of veniremembers without receiving a response to proper questioning, where those responses might very well have shown the veniremembers to be acceptable and that the party would not have wanted to exercise a peremptory challenge to remove such venire-

members. And blindly exercising a peremptory challenge does not cure the error in denying questioning of a veniremember whom appellant would have deemed acceptable had he been allowed to answer the question—it certainly does not return the struck veniremember to the panel and allow for jury service.

I also point out that based upon the differences in the procedures of jury selection in capital death penalty vs. non-death penalty trials, this type of error may involve different harmful effects. In death penalty trials, jury selection is done on an individual basis with individual questioning and peremptory and causal challenges being exercised one veniremember at a time. *See* Articles 35.13 and 35.17, V.A.C.C.P.; *Bigby v. State,* 892 S.W.2d 864, 879–81 (Tex.Cr.App.1994), *cert. denied,* 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995). However, in non-death penalty trials, the State and the defendant exercise their peremptory challenges on separate lists at the end of voir dire; thus the defendant does not know which veniremembers the State is exercising its peremptory challenges on. *See* Articles 35.25 and 35.26, V.A.C.C.P. In such non-death penalty situations, the prohibition of legally proper questioning of veniremembers certainly has an even more critical effect on decisions in utilizing the peremptory challenges, and the denial of information to be elicited from such proper questioning is even more harmful than in the case of death penalty individual voir dire where the strikes are exercised one at a time. In this case, appellant used peremptory strikes on all three of the veniremembers-in-question, but the State also peremptorily struck two of them; thus appellant blindly used two peremptory strikes on two veniremembers who would have been excluded by the State's use of its peremptory strikes. Both parties' intelligent exercise of their peremptory strikes would have been facilitated by allowing appellant to receive answers to the proper questions he sought to ask.

## IV. CONCLUSION

Because a majority of this Court continues to encourage, enforce, and reward ignorance and lack of knowledge in the jury selection process, I respectfully dissent.

BAIRD and PRICE, JJ., join.