TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00062-CR






Larry Gatlin, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0915762, HONORABLE JON N. WISSER, JUDGE PRESIDING





 Appellant Larry Gatlin was convicted of murder (1) and was sentenced to ninety-nine
years' confinement. Gatlin initially raised three issues on appeal, but has conceded his first two
points in a supplemental brief to this Court. (2) In his sole remaining point of error, Gatlin argues
that the trial court erred in refusing to exclude the mother of the victim from the courtroom under
Texas Rule of Criminal Evidence 613, Exclusion of Witnesses (hereinafter referred to as "the
Rule"). We will affirm the conviction.


BACKGROUND

 Gatlin pled not guilty to the murder of Dwight Clinton. At the beginning of his
trial, Gatlin invoked the Rule, which states:


At the request of a party the court shall order witnesses excluded so that they
cannot hear the testimony of other witnesses, and it may make the order on its own
motion. This rule does not authorize exclusion of (1) a party who is a natural
person, or (2) an officer or employee of a defendant which is not a natural person
designated as its representative by its attorney, or (3) a person whose presence is
shown by a party to be essential to the presentation of his cause, or (4) the victim,
unless the victim is to testify and the court determines that the victim's testimony
would be materially affected if the victim hears other testimony at the trial.



Tex. R. Crim. Evid. 613 (emphasis added). The State requested that Rose Simms, the victim's
mother and a witness for the State, be allowed to stay in the courtroom as an exception to the
Rule. The trial court granted the State's request, stating that Simms qualified as a "victim" under
subsection four of the Rule.

 In order to demonstrate Gatlin's motive for committing the murder of Dwight
Clinton, the State introduced testimony of Daryll White that prior to the murder he and Clinton
had burglarized the home of J.P. Goode, Gatlin's cousin, to steal crack cocaine. On cross-examination, White admitted that he had informed the district attorney's office about the burglary
just two weeks prior to trial. In a recross-examination which focused on White's delay in
informing law enforcement about the burglary, White responded negatively when asked if he had
told anyone about the burglary before he informed the prosecutors. During the State's second
redirect, White testified that he had actually told Simms about the burglary shortly after the
murder, well before speaking with the prosecutors about the matter. The dispute revolves around
whether Simms, after hearing White's testimony on recross that he had not told anyone about the
burglary before telling the district attorney's office, prejudiced Gatlin's trial by instructing the
prosecutors to ask White about her previous discussion with him regarding the burglary.


DISCUSSION

 In his only remaining point of error, Gatlin argues that the trial court erred in
excepting the mother of the victim from the requirement of the Rule that she leave the courtroom
during White's testimony. The party seeking to exempt a witness under the Rule has the burden
of showing that the claimed exception applies. See Moore v. State, 882 S.W.2d 844, 848 (Tex.
Crim. App. 1994). If the party fails to make an adequate showing that the witness should be
exempted, but the court nevertheless grants the exemption, the ruling is reviewed under an abuse
of discretion standard. See Martinez v. State, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993).

 The trial court erred in its application of the Rule. Simms was not the victim of the
crime, nor was she named in the indictment. See Tex. R. Crim. Evid. 613(4). Clinton's status
as victim was not transferable to his mother, especially in light of her additional role as witness
for the prosecution. Therefore, Simms should not have been permitted to remain in the courtroom
under the "victim" exception, or any other exception to the Rule.

 This does not, however, conclude our inquiry. A violation of the Rule is not itself
reversible error. See Guerra v. State, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988). We must
determine whether injury has been done to the defendant by this violation of the Rule. We
conclude it has not.

 To ascertain whether harmful error occurred when a testifying witness was
wrongfully excepted from the Rule, a reviewing court must determine if the defendant was injured
by the witness's testimony. See id. In doing so, we must consider: (1) whether the witness
actually heard the testimony or conferred with another witness without court permission, and (2)
whether the witness's testimony contradicted the testimony of a witness she actually heard from
the opposing side or corroborated the testimony of a witness she actually heard from the same side
on an issue of fact bearing upon the issue of guilt or innocence. See Cooks v. State, 844 S.W.2d
697, 733 (Tex. Crim. App. 1992) (citing Guerra, 771 S.W.2d at 476).

 Gatlin complains that because Simms was allowed to stay in the courtroom, she was
able to confer with prosecutors during White's testimony. Her presence allegedly resulted in the
prosecutors eliciting prejudicial rebuttal testimony from White, namely that White's testimony
providing motive in the case was not recently manufactured for trial. Gatlin argues that White
testified on cross-examination that he had not told anybody about the burglary of Gatlin's home
until two weeks prior to the trial, but that after Simms conferred with the prosecutors the State was
able to rehabilitate the witness by asking him about his previous conversation with Simms
regarding the burglary. (3) 

 We initially note that the instant dispute does not fit the normal scenario associated
with a violation of the Rule and a harm analysis under the Cooks test. The purpose of placing
witnesses in a proceeding under the sequestration rule is to prevent the testimony of one witness
from influencing the testimony of another. Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App.
1996). Although the trial court's failure to exclude Simms allowed her to hear the testimony of
other witnesses, including that of White, her testimony pertained exclusively to the last time she
saw her son alive, when she learned of his murder, and her identification of him. Simms's and
White's testimony are completely unrelated. Thus, a harm analysis under Cooks leads to the
conclusion that no harm resulted from excepting Simms from the Rule.

 Any nonconstitutional error that does not affect a substantial right of the accused
must be disregarded. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had
a substantial and injurious influence in determining the jury's verdict. See King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). There is nothing inappropriate per se with a
prosecution witness communicating with the prosecutors. Had this conversation occurred in the
hallway, Gatlin's rights would remain unharmed. The only possible harm from the trial court's
error in allowing Simms's continued presence in the courtroom was her alleged prompting of the
prosecution to ask White about their previous conversation. This, at most, allowed minimal
rehabilitation of a witness regarding a collateral issue. We refuse to say Simms's continued
presence had a substantial and injurious influence in determining the jury's verdict. Consequently,
we overrule Gatlin's sole point of error.


CONCLUSION


 Although we conclude that the failure to exclude the victim's mother from the
courtroom violated the Rule, we hold the error is ultimately harmless and affirm the judgment of
the trial court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and B. A. Smith

Affirmed

Filed: May 6, 1999

Do Not Publish

1. See Tex. Penal Code Ann. § 19.02 (West 1994).
2. In points of error one and two, Gatlin contended that the trial court erred in not recalling
a prospective juror, number forty-five, to be questioned, preventing Gatlin from challenging the
venireman for cause. Because Gatlin eventually struck juror forty-five using his last peremptory
challenge, no harm can be shown as a matter of law. See Anson v. State, 959 S.W.2d 203, 204
(Tex. Crim. App. 1997), cert. dism'd, 119 S. Ct. 290 (defendant only harmed by erroneous denial
of challenge for cause if objectionable venireman actually seated on jury).
3. Gatlin also argues that White initially denied that he had previously told anybody that Gatlin
was "the shooter" in the case, but changed that testimony after Simms conferred with the
prosecutors. We have found no evidence in the record that White ever testified about the identity
of "the shooter," or that he ever identified appellant as "the shooter."


llowed to stay in the courtroom, she was
able to confer with prosecutors during White's testimony. Her presence allegedly resulted in the
prosecutors eliciting prejudicial rebuttal testimony from White, namely that White's testimony
providing motive in the case was not recently manufactured for trial. Gatlin argues that White
testified on cross-examination that he had not told anybody about the burglary of Gatlin's home
until two weeks prior to the trial, but that after Simms conferred with the prosecutors the State was
able to rehabilitate the witness by asking him about his previous conversation with Simms
regarding the burglary. (3) 

 We initially note that the instant dispute does not fit the normal scenario associated
with a violation of the Rule and a harm analysis under the Cooks test. The purpose of placing
witnesses in a proceeding under the sequestration rule is to prevent the testimony of one witness
from influencing the testimony of another. Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App.
1996). Although the trial court's failure to exclude Simms allowed her to hear the testimony of
other witnesses, including that of White, her testimony pertained exclusively to the last time she
saw her son alive, when she learned of his murder, and her identification of him. Simms's and
White's test